**UNITED STATES of America, Plaintiff,**

**v.**

**Bruce PERRAUD and Thomas Raffanello, Defendants.**

**Case No. 09–60129–CR.**

United States District Court, S.D. Florida.

Dec. 1, 2009.

Matthew A. Klecka, United States Attorney's Office, Miami, FL, Jack B. Patrick, United States Department of Justice, Washington, DC, for Plaintiff.

Edward Robert Shohat, Bierman Shohat Loewy & Kegerreis, Miami, FL, for Defendant Bruce Perraud.

Richard Alan Sharpstein, Janice Burton Sharpstein, Ari H. Gerstin, Jorden Burt LLP, Miami, FL, for Defendant Thomas Raffanello.

## *ORDER*

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court upon the Report and Recommendation (DE 85) filed herein by United States Magistrate Judge Robin S. Rosenbaum and upon Defendants Thomas Raffanello and Bruce Perraud's Motion To Dismiss The Superseding Indictment (DE 64). The Court has conducted a *de novo* review of the entire record herein and is otherwise fully advised in the premises.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants Thomas Raffanello and Bruce Perraud's Objections To The Magistrate's Report And Recommendation (DE 89) be and the same is hereby **OVERRULED;**

2. The Report and Recommendation (DE 85) filed herein by United States Magistrate Judge Robin S. Rosenbaum be and the same is hereby approved, adopted and ratified by the Court;

3. Defendants Thomas Raffanello and Bruce Perraud's Motion To Dismiss The Superseding Indictment (DE 64) be and the same is hereby **GRANTED** in part and **DENIED** in part;

4. Defendants Thomas Raffanello and Bruce Perraud's Motion To Dismiss The Superseding Indictment (DE 64) be and the same is hereby **GRANTED** as to Count 2, the violation of 18 U.S.C. § 1505, and as to the part of Count 1 charging Defendants with conspiring to commit a violation of Section 1505; and

5. In all other respects, Defendants Thomas Raffanello and Bruce Perraud's Motion To Dismiss The Superseding Indictment (DE 64) be and the same is hereby **DENIED**.

## *REPORT AND RECOMMENDATION*

ROBIN S. ROSENBAUM, United States Magistrate Judge.

This matter comes before the Court upon Defendants Thomas Raffanello and Bruce Perraud's Motion to Dismiss the Superseding Indictment [D.E. 64],[1] upon Order of Referral for report and recommendation [D.E. 66] entered by the Honorable William J. Zloch. I have carefully reviewed Defendants' Motion, all filings in support thereof and in opposition thereto, and the record in this case, have heard argument on October 23, 2009, and am otherwise duly advised in the premises. Based on consideration of these materials, I respectfully recommend that the Court grant in part and deny in part Defendants' Motion to Dismiss. More specifically, I recommend that the Court grant Defen-

dants' Motion to Dismiss as it pertains to Count 2 (the 18 U.S.C. § 1505 violation) and the part of Count 1 charging Defendants with conspiring to commit a violation of Section 1505. In all other respects, I recommend that the Court deny Defendants' Motion to Dismiss.

### *Background*

### *1. The Superseding Indictment*

On September 10, 2009, a federal grand jury returned a Superseding Indictment against Defendants charging each of them with conspiracy to obstruct a proceeding pending before the Securities and Exchange Commission ("SEC") and to destroy records in an SEC investigation, in violation of 18 U.S.C. § 371 (Count 1); obstruction of a proceeding pending before the SEC, in violation of 18 U.S.C. § 1505 (Count 2); and destruction of records in an SEC investigation, in violation of 18 U.S.C. § 1519 (Count 3). *See* D.E. 29. Because analysis of the pending Motion depends upon a thorough analysis of the Superseding Indictment, the Court reviews in detail the contents of the Superseding Indictment.

In an introductory section of the conspiracy count, the Superseding Indictment alleges that Stanford Financial Group ("SFG") served as the parent entity for, among other companies, Stanford International Bank, Ltd. ("SIBL"), a private, offshore bank that marketed certificates of deposit ("CDs") in the United States. D.E. 29 at 1, ¶¶ 1, 5. According to the Superseding Indictment, SFG employed Defendants Raffanello and Perraud, who worked primarily out of SFG's Fort Lauderdale office.[2] *Id.* at 2, ¶¶ 3–4.

---

**1.** Defendant Thomas Raffanello filed the original Motion to Dismiss the Superseding Indictment. *See* D.E. 64. After Defendant Bruce Perraud moved to adopt Defendant Raffanello's Motion, *see* D.E. 67, the Honorable William J. Zloch granted Defendant Per-

raud's Motion [D.E. 70], thereby effectively rendering D.E. 64 both Defendants' Motion.

**2.** Defendants assert that they did not work for SFG, but instead, Stanford Financial Group Company ("SFGC") employed them. *See* D.E. 64, D.E. 64–2. Because the court must

The Superseding Indictment further avers that on February 16, 2009, the SEC filed a complaint against SIBL, SFG, and related individuals and entities in the United States District Court for the Northern District of Texas, claiming, among other allegations, that SIBL used the CDs it sold to orchestrate a "massive, ongoing fraud" (the "Texas Action"). *Id.* at 2–3, ¶ 6; D.E. 64–3. In response to the SEC's complaint, on February 16, 2009, the United States District Court for the Northern District of Texas issued an order appointing a receiver to, among other tasks, "exercise exclusive possession, custody, and control of SFG and its affiliated entities and to trace and identify assets in order to return deposits to defrauded investors." D.E. 29 at 3, ¶ 7. Additionally, the order restrained the Texas Action defendants from, among other actions, destroying or disposing of records "that relate in any way to the Receivership Estate or are relevant to [the Texas Action]" and interfering with "the Receiver's taking control, possession, or management of the Receivership Estate or ... interfer[ing] ... with the exclusive jurisdiction of [the Texas court] over the Receivership Estate." *Id.* at 3–4, ¶¶ 8–9.

After setting forth this background information, the Superseding Indictment asserts that on February 17, 2009, the receiver sent an electronic mail ("e-mail") message that Defendants received, alerting all SFG employees "to the SEC investigation and lawsuit, as well as the court order appointing the [r]eceiver." *Id.* at 4–5, ¶ 11; *see also id.* at 8, ¶¶ 19, 20. According to the SEC, the February 17, 2009, e-mail from the receiver advised SFG employees that the court in the Texas Action had "mandated 'preservation of documents' and that 'all employees and agents of the Stanford Company cooperate with the [r]eceiver ... [and] all assets and records be turned over to the [r]eceiver as requested.'" *Id.* at 5, ¶ 12. Furthermore, the Superseding Indictment asserts, the e-mail instructed SFG employees that they had been "'ordered to preserve (and not hide or destroy) any and all documents, notes, and records.... [A]ccordingly[,][SFG] employees may not hide, destroy or alter any document or electronic record relating to the company.'" *Id.*

Despite Defendants' alleged knowledge that SFG employees were to preserve all SFG documents and "cooperate with the SEC and the [r]eceiver," the Superseding Indictment charges, Defendants caused SFG's records to be destroyed and refused to provide information to the receiver's representative about the documents of SFG and SFG's operations at the Fort Lauderdale office. *Id.* at 7, ¶ 16. More specifically, according to the Superseding Indictment, on February 23, 2009, Defendant Raffanello "instructed another SFG employee to contact a shredding company to arrange for the immediate destruction of all the documents at SFG's Fort Lauderdale office." *Id.* at 8–9, ¶¶ 17–21. On the same date, the Superseding Indictment contends, Defendant Perraud called the shredding company and requested that it come SFG's Fort Lauderdale office to shred documents. *Id.* at 9, ¶ 22. The Superseding Indictment further avers that on February 25, 2009, the shredding company arrived at SFG's Fort Lauderdale office, and Defendant Perraud escorted that person to numerous documents, supervising the shred-

accept allegations contained in the indictment as true for purposes of resolving a motion to dismiss based on the sufficiency of the indictment, *see United States v. Critzer,* 951 F.2d 306, 307 (11th Cir.1992) and *United States v. Salman,* 378 F.3d 1266, 1268–69 (11th Cir.

2004) (quoting *Critzer,* 951 F.2d at 307), the Court assumes the correctness of the allegations contained within the Superseding Indictment for purposes of analyzing Defendants' Motion to Dismiss.

ding company's representative as that person packed a 95–gallon bin with documents, hauled the container to a shredder located in the shredding company's truck, and shredded the documents. *Id.* at 9–10, ¶¶ 24–25. While this allegedly occurred, the Superseding Indictment continues, four additional SFG employees made approximately eight trips between the SFG office and the shredding company's shredder truck with more documents for destruction, and SFG employees retrieved files and documents from cars parked in the SFG parking lot and delivered them to the shredding company's representative for destruction. *Id.* at 10, ¶¶ 25–26.

The following day, February 26, 2009, the receiver visited SFG's Fort Lauderdale office. At that time, Defendant Raffanello confronted the receiver's, the Superseding Indictment charges. *Id.* at 10, ¶ 27. The Superseding Indictment further alleges that Defendant Raffanello "ordered the [r]eceiver's [r]epresentative to sit in the back office and interceded to prevent the [r]eceiver's [r]epresentative from questioning [Defendant Perraud] regarding SFG's documents and records." *Id.*

Based on these allegations, Count 1 of the Superseding Indictment charges that Defendants conspired with each other and others

 (a) to corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had before the United States Securities and Exchange Commission, an agency of the United States, in violation of Title 18, United States Code, Section 1505;

 (b) to knowingly alter, destroy, and mutilate records, documents, and tangible objects with the intent to impede, obstruct, and influence the

investigation and proper administration of any matter within the jurisdiction of any department or agency of the United States, that is, the United States Securities and Exchange Commission, and in relation to and contemplation of any such matter or case, in violation of Title 18, United States Code, Section 1519.

*Id.* at 6–7, ¶ 15.

Count 2 of the Superseding Indictment, subtitled, "Obstruction of Proceeding Before the SEC," incorporates the factual allegations recited in furtherance of Count 1 and charges that Defendants

 aided and abetted by each other and other individuals, did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had before the United States Securities and Exchange Commission, an agency of the United States, in violation of Title 18, United States Code, Sections 1505 and 2.

*Id.* at 11, Count 2, ¶ 2. Similarly, Count 3, subtitled, "Destruction of Records in Federal Investigation," adopts the factual allegations contained in Count 1 and asserts that Defendants

 aided and abetted by each other and other individuals, did knowingly alter, destroy, and mutilate, records, documents, and tangible objects with the intent to impede, obstruct, and influence the investigation and proper administration of any matter within the jurisdiction of any department or agency of the United States, that is, the United States Securities and Exchange Commission . . ., and in relation to and contemplation of any such matter and case, in that [Defendants] knowingly destroyed and caused to be destroyed records and doc-

uments of SFG and its affiliated entities knowing that such records were ordered to be preserved by the United States District Court for the Northern District of Texas in connection with an SEC investigation and lawsuit, that is, [the Texas Action], in violation of Title 18, United States Code, Sections 1519 and 2.

*Id.* at 12–13.

### 2. The Motion to Dismiss [D.E. 64]

On September 30, 2009, Defendant Raffanello filed the pending Motion to Dismiss the Superseding Indictment [D.E. 64]. In this Motion, Defendants assert that the charges in the Superseding Indictment are "predicated upon (a) the [SEC][c]omplaint [filed in the Texas Action] ...; [and], (b) Court Orders Appointing Receiver and Prohibiting Document Destruction rendered in [the Texas Action].'" D.E. 64 at 2–3 (quoting D.E. 29). Thus, Defendants reason, the charges in the Superseding Indictment are

directly dependent upon (1) the ... [Texas Action] [c]omplaint; (2) whether the SEC [c]omplaint named Stanford Financial Group Company as a defendant in the original complaint; (3) whether orders appointing the [r]eceiver authorized the [r]eceiver's actions in this case; (4) whether Stanford Financial Group Company was subject to the original orders appointing the [r]eceiver; and, (5) whether the [r]eceiver perfected his jurisdiction over Stanford Financial Group Company, its employees (including Raffanello) and its assets in the Southern District of Florida.

*Id.* at 2–3. Because none of the Texas Action orders apply to the Stanford Financial Group Company, which employs Defendants, Defendants contend, Defendants have never been subject to the Texas Action orders, and they were under no duty to comply with them. *Id.* at 3–20. Moreover, Defendants argue, even had the Texas Action orders expressly purported to restrain the actions of Stanford Financial Group Company and Defendants, the receiver enjoyed no jurisdiction in the Southern District of Florida because he failed to filed copies of the Texas Action complaint and order in the Southern District of Florida within ten days after the Texas court entered the Texas Action order appointing the receiver. *Id.* Accordingly, Defendants conclude, Defendants were subject to no viable complaint or order and therefore could not possibly have violated such a complaint or order. *Id.*

The United States responds by denying the premise of Defendants' Motion. According to the United States, "the Superseding Indictment **does not** charge the Defendants with obstructing any specific court order...." D.E. 77 at 1 (emphasis in original). Rather, the Government asserts, the Superseding Indictment alleges that Defendants conspired to impede and did impede a "proceeding pending before ... the SEC" and that Defendants conspired to destroy and did destroy records "with the intent to ... obstruct ... the investigation ... of [a] matter within the jurisdiction of [the SEC], or in relation to ... such matter or case." *See id.* at 7 (citing *United States v. Hoffman–Vaile,* 568 F.3d 1335, 1343 (11th Cir.2009); *United States v. Lessner,* 498 F.3d 185, 196 (3d Cir.2007); *United States v. Atlantic States Cast Iron Pipe Co.,* 612 F.Supp.2d 453, 540 (D.N.J.2009)). In other words, according to the United States, Defendants' Motion to Dismiss complains about charges that do not exist in the Superseding Indictment.

In reply, Defendants no longer press their argument that the Superseding Indictment should be dismissed because its viability depends on Defendants' alleged violation of the Texas Action orders. Instead, in view of the Government's Re-

sponse, Defendants argue that the Superseding Indictment still suffers from fatal deficiencies because the United States has charged Defendants with obstruction of an administrative proceeding and destruction of documents with the intent to obstruct an administrative proceeding, as well as conspiracy to commit these crimes, without identifying any specific administrative proceeding or investigation that Defendants are alleged to have obstructed. *See* D.E. 78 at 2.

On October 23, 2009, the Court held a hearing on Defendants' Motion to Dismiss. At the hearing, in an effort to hone in on the issues remaining before the Court following the parties' briefing, as well as to enable the Court to examine the Superseding Indictment to ensure that the Government's theory of prosecution matches the charges in the Superseding Indictment, the Court questioned the United States concerning its theory of prosecution, more specifically, the nature of the SEC proceeding that Defendants are charged with obstructing and destroying records to impede. In response, the United States asserted that the proceeding that Defendants are charged with obstructing, destroying documents to obstruct, and conspiring to obstruct consists of the SEC investigation that continued even after the SEC filed its complaint in the Texas Action and the Texas court issued its orders in that case.

Moreover, the Government contended, when viewed as a whole, the Superseding Indictment fairly provides notice that Defendants are charged with obstructing the particular SEC investigation that the Government described at the October 23, 2009, hearing. More specifically, the United States explained, the receiver serves as but one tool in the SEC's chest for identifying and obtaining assets of allegedly defrauded investors during the course of an SEC investigation. According to the SEC,

as its ultimate goal includes recompensing allegedly defrauded investors, the SEC's investigation tasked with accomplishing this feat continues even after the filing of a civil action and the appointment of a receiver. It is this investigation and SEC proceeding that the Government argued Defendants obstructed. As the United States explained the Superseding Indictment, it refers to the Texas Action and orders repeatedly only for purposes of establishing that Defendants had notice of a pending SEC proceeding, and, more specifically, the SEC investigation.

For their part, Defendants responded that while the United States may have intended to charge violations relating to obstruction of an SEC proceeding, the Superseding Indictment fails to accomplish that goal. Indeed, Defendants urged, the Superseding Indictment never specifically identifies any pending SEC proceeding. To the contrary, Defendants emphasized, it refers approximately 39 times to the Texas Action. Consequently, Defendants argued at the hearing, the Superseding Indictment suffers from fatal flaws and must be dismissed.

At the conclusion of the hearing, the Court provided the parties with the opportunity to file notices of supplemental authority by the end of the day and gave each side the chance to respond to any such supplemental authority by October 28, 2009. Taking the Court up on its offer, the Government filed a Notice of Supplemental Authority [D.E. 82] in which it directed the Court to *United States v. Senffner*, 280 F.3d 755 (7th Cir.), *cert. denied*, 536 U.S. 934, 122 S.Ct. 2613, 153 L.Ed.2d 798 (2002), for the proposition that "an SEC investigation is a proceeding and that such SEC proceeding, as contemplated in 18 U.S.C. § 1505, does not terminate upon the SEC's filing of a civil complaint in district court." D.E. 82 at 1.

On October 28, 2009, Defendants filed their Response to the Government's Notice of Supplemental Authority [D.E. 84]. In this Response, Defendants asserted that the theory of prosecution that the Government articulated at the October 23, 2009, hearing cannot withstand scrutiny, and, even if it could, the United States failed to charge that theory of prosecution in the Superseding indictment. This matter is now ripe for consideration.

### Analysis

Defendants' Motion to Dismiss directs arguments at both the Government's theory of prosecution and the sufficiency of the Superseding Indictment in this case. With regard to the theory of prosecution, the Court must determine whether, as the United States argued at the October 23, 2009, hearing, a receiver's investigation pursuant to court order applied for by the SEC in an effort to protect assets and distribute them for the benefit of victims of the alleged fraud can be considered part of an SEC investigation for purposes of a "pending proceeding" under Section 1505. If the answer to this question is "no," the Superseding Indictment must be dismissed. If, on the other hand, the answer is "yes," the Court must consider the sufficiency of the Superseding Indictment as drafted, in particular, whether the Superseding Indictment must specifically identify the "pending proceeding ... before the [SEC]" to be legally sufficient, and, if so, whether the Superseding Indictment does, in fact, sufficiently charge that the pending proceeding that Defendants are alleged to have endeavored to obstruct consists of the ongoing SEC investigation that the Government described during the October 23, 2009, hearing.

### 1. The Government's Theory of Prosecution

The Court begins with the Government's theory of prosecution. As noted above, the United States explained at the October 23, 2009, hearing that it considers the SEC proceeding that Defendants allegedly impeded and obstructed by allegedly destroying documents to consist of an ongoing SEC investigation carried out in part through the court-appointed receiver, for the purpose of protecting the allegedly fraudulently obtained assets and distributing them to victims of the alleged fraud. In conducting its inquiry into the viability of the Government's theory of the case, the Court begins, as it must, with the language of 18 U.S.C. § 1505.[3] This statute provides, in relevant, part,

> Whoever corruptly, ... influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States ... [s]hall be fined under this title, imprisoned not more than 5 years....

18 U.S.C. § 1505. In the Eleventh Circuit, " '[w]hen the import of the words Congress has used is clear, ... we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory lan-

---

**3.** As with the charges under Section 1505, Defendants assert that the Superseding Indictment is defective with respect to the charges under Section 1519 because the receiver's inquiry pursuant to the Texas Action order and the SEC's Texas Action lawsuit do not qualify as part of an "investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States," as required by Section 1519. Because consideration of Defendants' argument in this regard parallels the analysis of Defendants' argument concerning alleged deficiencies in the Government's Section 1505 theory of prosecution, for ease of reference, the Court specifically discusses only Section 1505.

guage.'" *United States v. Weaver*, 275 F.3d 1320, 1331 (11th Cir.2001) (quoting *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir.2000) (*en banc* )). The only exception to this rule comes into play when relying on the plain meaning rule yields absurd results. *Id.* (citing *CBS Inc. v. Prime-Time 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir.2001)).

Several other courts have considered the meaning of Section 1505 and of the word "proceeding," in particular. Beginning in 1964, courts have consistently described the term "proceeding" in Section 1505 as "very broad [in] scope." *See United States v. Batten*, 226 F.Supp. 492, 493 (D.D.C.1964); *see also, e.g., Rice v. United States*, 356 F.2d 709, 715 (8th Cir.1966); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.1970); *United States v. Mitchell*, 877 F.2d 294, 300 (4th Cir.1989); *United States v. Schwartz*, 924 F.2d 410, 423 (2d Cir.1991); *United States v. Leo*, 941 F.2d 181, 198–99 (3d Cir.1991); *United States v. Senffner*, 280 F.3d 755, 761 (7th Cir.2002); *United States v. Stickle*, 355 F.Supp.2d 1317, 1328 (S.D.Fla.2004); *United States v. Adams*, 472 F.Supp.2d 811, 816 (W.D.Va.2007). Indeed, the Eighth Circuit has opined, " 'Proceeding' is a comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something." *Rice*, 356 F.2d at 712 (citing *Webster's Third New International Dictionary* ); *see also Adams*, 472 F.Supp.2d at 816 (same). Thus, "[p]roceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion." *Rice*, 356 F.2d at 712.

Based on this construction, courts have found a wide variety of circumstances to constitute "proceedings" under Section 1505. In *Rice*, for example, the court not-ed that "[g]overnmental agency proceedings frequently embrace both investigative and adjudicative proceedings." *Rice*, 356 F.2d at 713. Consequently, the court held that a short-lived investigation conducted by the Labor Board constituted a "proceeding" for purposes of Section 1505, even though the individuals whose complaint initiated the investigation withdrew their complaint before the Labor Board completed its investigation, and the Labor Board took no further action upon the individuals' withdrawal of their complaint. *See id.; see also Fruchtman*, 421 F.2d at 1021 (defendant's submission of false invoices to a Federal Trade Commission attorney resulting in the FTC's closing of its investigation for lack of evidence of a violation constituted an action undertaken in the course of a "proceeding" before the FTC); *United States v. Sutton*, 732 F.2d 1483, 1490–91 (10th Cir.1984) (where defendant allegedly obstructed Department of Energy investigation after the time for compliance with a DOE subpoena expired, DOE's investigation was a "proceeding").

While courts have also determined that other agency activities constitute "proceedings" under Section 1505, this Court finds the cases of *Senffner* and *United States v. Hopper*, 177 F.3d 824 (9th Cir.1999), to be most relevant to the specific question at issue in the instant matter. In *Hopper*, the United States obtained a judgment in federal court against Reed regarding delinquent taxes and sought to foreclose the judgment lien. Reed's son then went to the United States Marshal's Service and attempted to "pay" the judgment against Reed's property with a bogus monetary instrument. In so doing, Reed's son insisted that the Marshal's Service accept the document as satisfaction of the judgment, but the Marshal's Service refused. Later, the same spurious document was mailed to the Treasury Department in Washington, DC, but the IRS mailed it

back to Reed, stating that it would not accept the document as payment. The United States obtained an indictment against Reed and his son, alleging that they violated Section 1505 by attempting to obstruct a proceeding before the IRS when they tried to prevent the collection of the tax deficiencies by paying the judgment with a fraudulent monetary instrument. In defending themselves, the Reeds argued that while their actions may have obstructed a judgment of the federal courts, they did not obstruct an agency or department "proceeding" under Section 1505.

The Ninth Circuit rejected the Reeds' position, directing the Reeds to *United States v. Aguilar*, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). *See Hopper*, 177 F.3d at 830. In this regard, the Ninth Circuit noted that *Aguilar* construed 18 U.S.C. § 1503, which criminalizes obstructing a judicial proceeding. *Id.* The indictment in *Aguilar* charged the defendant with intentionally providing false information to federal investigators who were potentially going to be called to testify before a grand jury. While the Supreme Court held that lying to an investigating agent who " 'might or might not testify before a grand jury' " did not constitute obstruction of a judicial proceeding, "had the investigators been subpoenaed or summoned by the grand jury, or had there been proof that they were acting as an arm of the grand jury, there would have been enough to support a conviction for obstructing a judicial proceeding." *Hopper*, 177 F.3d at 830 (citing and quoting *Aguilar*, 515 U.S. at 600–02, 115 S.Ct. 2357). To be indictable for obstruction of a judicial proceeding, the Supreme Court opined, a defendant's actions must have had "a 'natural and probable effect of interfering with the due administration of justice.' " *Hopper*, 177 F.3d at 830 (quoting *Aguilar*, 515 U.S. at 601, 115 S.Ct. 2357). Relating these principles to the facts in *Hopper*, the Ninth

Circuit concluded that the Reeds' actions "had the 'probable and natural' [e]ffect of obstructing a proceeding before the IRS. If accepted, the phony warrant would have precluded collection of the tax debt and the enforcement of the IRS tax liens. Until the debt behind those liens was satisfied, the collection proceeding before the IRS continued." *Hopper*, 177 F.3d at 830.

*Senffner* relied on the *Hopper* Court's analysis and applied it in the context of an SEC case. More specifically, in *Senffner*, Senffner, an insurance and benefits agent, entered into improper investment schemes with an individual working for the Chicago Housing Authority ("CHA"), who was supposed to have been finding insurance and benefits for CHA agents, but instead was using the CHA's monies as a personal investment fund. The SEC filed a lawsuit against CCI, a partnership created by Senffner in which CHA had invested significant funds, seeking civil penalties and interest, a temporary and permanent injunction, and a freeze of assets. Based on the SEC's filings, the district court issued a temporary restraining order freezing assets.

Around the same time, the Tennessee Department of Commerce arranged for the trust assets of the Legacy Trust, one of the companies in which Senffner had invested CHA monies to be placed in receivership for the benefit of victims. Because the biggest victim of the Legacy Trust had been CCI, the Tennessee Receiver's Office sent a check to CCI for $373,714.91, representing what remained of CCI's loss. When Senffner learned of the check, he had the receiver place a stop-payment order on it and issue a new check to him. These funds were subject to the temporary restraining order that arose out of the SEC lawsuit against CCI. Based on these events, the United States charged Senffner with, among other violations, ob-

struction of justice under 18 U.S.C. § 1503 and obstruction of a proceeding pending before the SEC under 18 U.S.C. § 1505.

Senffner challenged his conviction under Section 1505, arguing that the SEC had no independent authority to freeze or distribute assets, or to impose civil penalties, and instead required an order from the federal district court to engage in these activities. Thus, Senffner urged, he obstructed only the district court and not the SEC. In concluding that Senffner had obstructed both the court and the SEC, the Seventh Circuit imported *Hopper's* analysis of *Aguilar* and noted that the SEC "can only act through individuals or other instrumentalities using the enforcement mechanisms it has available." 280 F.3d at 760. Because of this practicality, the court reasoned, "whenever an entity acting for or at the direct request of an agency has been obstructed, the agency itself has also been obstructed." *Id.* (citing *Aguilar*, 515 U.S. at 600, 115 S.Ct. 2357). Indeed, "[t]he fact that an agency cannot perform a particular function itself or through its own labor is of no moment; rather the question is whether the agency proceeding affirmatively, by its specific actions, seeks to have the particular function performed as part of the proceeding." *Id.*

Applying these concepts to the facts in *Senffner*, the court identified the purpose of the SEC's initial investigation of securities law violations of Senffner, CCI, and related others, as being

not solely to investigate those violations for the sake of exposing them, but also to identify and recover CHA funds involved in the violations to remedy them. More to the point, that proceeding [the initial SEC investigation] did not end by virtue of the filing of the lawsuit. To the contrary, the SEC prosecution of the lawsuit was a natural extension of that proceeding, and its efforts to recover and return the funds were necessary to

achieve its goal. By obstructing the recovery of CHA funds, Senffner obstructed the district court, and, as a consequence, the SEC's initial investigation and enforcement of securities law violations (an SEC proceeding), which sought the return of the funds.

*Id.* In other words, a single event can be a part of more than one "proceeding." Consequently, although Senffner's actions in causing the stop-payment to be imposed and in arranging for the new check to be issued violated a court order freezing CCI's assets, and, thus, interfered with a judicial proceeding, they also obstructed an SEC proceeding in that these same activities impeded the SEC proceeding's goal of protecting CCI's assets and distributing them to the fraud victims.

Additionally, the Seventh Circuit upheld Senffner's conviction on an independent ground, finding "a more 'direct' obstruction." *Id.* at 761. In this regard, the court noted, "Assuming that the SEC's tracing of the funds was separate from its initial proceeding, that investigation constitutes a proceeding, even though the SEC lawsuit was already in progress and the SEC used the district court's process rather than its own." *Id.*

In accordance with the *Hopper* analysis and under either theory employed by *Senffner*, whatever else the SEC's post-Texas-filing efforts to identify assets both through the SEC exclusively and via the receiver appointed in the Texas Action may constitute, this Court concludes that they qualify as a "proceeding" for purposes of 18 U.S.C. § 1505. First, no serious debate can exist over whether the SEC was conducting an investigation regarding SFG and certain of its officers and employees prior to the SEC's filing of the complaint in the Texas Action. In fact, the SEC's complaint in the Texas Action specifically discusses the SEC's investigation.

*See, e.g.,* D.E. 64–4 at ¶ 7 ("In fact, far from 'cooperating' with the Commission's enforcement investigation ..., SGC appears to have used press reports speculating about the Commission's investigation as [a] way to further mislead investors....").

Second, the SEC described its purpose in filing the complaint in the Texas Action as follows:

> The Commission, in the interest of protecting the public from any further unscrupulous and illegal activity, brings this action against the defendants, seeking temporary preliminary and permanent injunctive relief, disgorgement of all illicit profits and benefits defendants have received plus accrued prejudgment interest and a civil monetary penalty. The Commission also seeks an asset freeze, an accounting and other incidental relief, as well as the appointment of a receiver to take possession and control of defendants' assets for the protection of defendants' victims.

*Id.* at ¶ 14. Moreover, the SEC requested the appointment of a temporary receiver in its complaint in the Texas Action "for the benefit of investors, to marshal, conserve, protect, and hold funds and assets obtained by the defendants and their agents, co-conspirators, and others involved in this scheme, wherever such assets may be found, or, with the approval of the Court, dispose of any wasting asset in accordance with the application and proposed order...." *Id.* at ¶ V under Relief Requested. The Texas court, in turn, entered an order appointing a receiver and directing that receiver to, among other tasks, "[p]romptly provide the [SEC] and other governmental agencies with all information and documentation they may seek in connection with its regulatory or *investigatory* activities." D.E. 64–5 at ¶ 5(k) (emphasis added).

Based on these facts, the Court finds the SEC's initiation of the Texas Action and the Court's appointment of the receiver at the SEC's request to be analogous to the IRS's enlistment of the assistance of the court in *Hopper* to obtain satisfaction of a tax debt by securing a court judgment, and the SEC's use of the court in *Senffner* to freeze the assets of CCI to avoid further dissipation of the victims' assets. In all three cases, the agency filed an action to procure the assistance of the court in accomplishing the goal of the agency's proceeding that the agency could not achieve on its own.

Here, as explained by the SEC itself in the Texas Action filings, the SEC's goals in its proceeding include preserving existing assets of SFG, disgorging the Texas Action defendants of allegedly ill-gotten gains, and returning any recovered funds to the alleged victims. Towards this end, the SEC initiated its proceeding when it began an investigation of the Texas Action defendants, and it continued that proceeding by filing the Texas Action and seeking the appointment of the receiver. Although the receiver is an arm of the court and not of the SEC, for the SEC to achieve its goal in this case, it had to ask the Texas court to appoint a receiver to engage in activities that further the SEC's proceeding that the SEC could not itself do. Nor does the SEC's lack of agreement with some of the receiver's actions in the Texas Action and its active opposition to some of the receiver's activities change the fact that the Texas Action order appointing the receiver expressly anticipates that the receiver will "[p]romptly provide the [SEC] ... with all information and documentation they may seek in connection with its regulatory or investigatory activities." D.E. 64–5 at ¶ 5(k).

Under these circumstances, even if the SEC and the receiver find themselves at each other's throats, any interference with

the activities of the receiver that, if unimpeded, would further the SEC's investigation, still constitutes an obstruction of an SEC proceeding. Just as the IRS's proceeding in *Hopper* did not end until the IRS collected the delinquent tax, and the SEC's proceeding in *Senffner* was not complete until the SEC protected the remaining assets of CCI and distributed them to the victims of the fraud, the SEC's proceeding in the SFG matter does not end until either the SEC accomplishes its goal of protecting and distributing the remaining assets of SFG to the alleged victims in the Texas Action or until the court in the Texas Action enters judgment for the Texas Action defendants (or the SEC otherwise settles the case with the Texas Action defendants). For these reasons, *Senffner* and *Hopper* compel the conclusion that the Government's theory of prosecution under Section 1505, as stated during the October 23, 2009, hearing is legally sound. Nor has the Court's research revealed any other cases as directly on point as *Senffner* and *Hopper* that reach a contrary determination.

Despite the teachings of *Hopper* and *Senffner*, Defendants urge the Court to find that the SEC's own regulations, *Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995), and the legislative history of Section 1505 each independently forecloses the Court's conclusion that the Texas Action receiver's activities in attempting to preserve records and conduct an investigation constitute part of an SEC proceeding under Section 1505. The Court disagrees. Each of the authorities Defendants cite in some way discuss, among other matters, in-court proceedings and administrative proceedings. Defendants effectively contend that the separate references to in-court and administrative proceedings mean that the two constitute mutually exclusive categories and only one of the two—administrative proceedings—can qualify as "proceedings" under Section 1505. Nothing in the cited authorities, however, reaches or even suggests this conclusion. Consequently, the Court declines to adopt Defendants' arguments.

Considering each assertion in order, the Court turns first to Defendants' argument that the SEC's own regulations indicate that in-court proceedings do not amount to "proceedings" for purposes of Section 1505. In this regard, Defendants refer the Court to the SEC's "[e]nforcement activities" regulations to show that the SEC recognizes a distinction between "administrative proceedings" and "proceedings in the courts." D.E. 78 at 8. Thus, Defendants assert, these categories are mutually exclusive and only matters qualifying as "administrative proceedings" under the regulations may constitute "proceedings" for purposes of Section 1505. *Id.* In furtherance of this argument, Defendants direct the Court to 17 C.F.R. 202.5, 17 C.F.R. 202.5(e), and 17 C.F.R. 202.5(f). These regulations provide, in relevant part,

> (b) After investigation or otherwise the Commission may in its discretion take one or more of the following actions: Institution of administrative proceedings looking to the imposition of remedial sanctions, initiation of injunctive proceedings in the courts, and, in the case of a willful violation, reference of the matter to the Department of Justice for criminal prosecution. . . .

> (e) The Commission has adopted the policy that in any civil lawsuit brought by it or in any administrative proceeding of an accusatory nature pending before it, . . . .

> (f) In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, . . . .

17 C.F.R. 202.5(b).

Defendants' position suffers from the fact that these regulations do not purport

to define "proceeding" for purposes of Section 1505. Moreover, Defendants' position proves too much. In light of Defendants' concession that "administrative proceedings" represent "proceedings" under Section 1505, we already know from case law that more than one of the categories identified by these SEC regulations qualify as a "proceeding" under Section 1505. In addition to "administrative proceedings" constituting Section 1505 "proceedings," it is by now well established that an investigation conducted by an agency with rule-making or adjudicative authority represents a "proceeding" under Section 1505. *See, e.g., Rice,* 356 F.2d 709, 712–13; *Senffner,* 280 F.3d at 761 ("An SEC investigation is a 'proceeding' "); *United States v. Persico,* 520 F.Supp. 96, 101 (E.D.N.Y. 1981); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976); *Batten,* 226 F.Supp. at 494; *United States v. Kelley,* 36 F.3d 1118, 1127 (D.C.Cir.1994); *Sutton,* 732 F.2d at 1490; *Leo,* 941 F.2d at 199; *Fruchtman,* 421 F.2d at 1021; *United States v. Browning, Inc.,* 572 F.2d 720, 724 (10th Cir.1978).

Thus, when Part 202.5(a) refers to "[a]fter investigation" and Part 202.5(f) mentions the "Commission's investigations," these "investigations" identified by the SEC regulations constitute "proceedings" under Section 1505. And, because the regulations identify "administrative proceedings" and "investigations" as separate categories of authorized SEC activity, both of which qualify as "proceedings" under Section 1505, the use of the term "administrative proceedings" in the SEC regulations cannot render "administrative proceedings" the sole category constituting "proceedings" under Section 1505 to the exclusion of all other types of SEC actions identified in the regulations. In fact, nothing about these regulations even purports to address what types of SEC activity qualify as "proceedings" under Section 1505.

Moreover, the SEC regulations relied upon by Defendants specifically employ the word "proceedings" in noting the availability of both "administrative proceedings" and "injunctive proceedings." *See* 17 C.F.R. 202.5(b). Thus, if looking to the regulations could provide any assistance in divining whether the SEC views civil lawsuits it files as part of SEC "proceedings" for purposes of Section 1505, one could just as easily argue that in promulgating the regulations referred to by Defendants, the SEC viewed "injunctive proceedings" as qualifying as Section 1505 "proceedings" because the SEC employed the term "proceedings" in describing certain civil actions it is empowered to initiate. The Court is no more inclined to rely upon this reading of the SEC regulations to discern the SEC's view of the meaning of "proceeding" in Section 1505 than it is to adopt Defendants' proposed construction. Accordingly, the Court finds that the SEC regulations do not shed light one way or the other on whether the Texas Action receiver's attempts to collect documentation can qualify as part of an SEC "proceeding" under Section 1505.

Turning to *Hubbard,* this case cannot assist Defendants any more than the SEC regulations. In *Hubbard,* the defendant made false statements during the course of a bankruptcy court case. The United States prosecuted the defendant for, among other crimes, making false statements in violation of 18 U.S.C. § 1001, which provides,

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly or willfully falsifies ... a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000

or imprisoned not more than five years, or both.

514 U.S. 695, 115 S.Ct. 1754 (citing 18 U.S.C. § 1001). In response, the defendant argued that he did not violate Section 1001 because a bankruptcy court is neither a department nor an agency of the United States. Agreeing with the defendant, the Supreme Court reversed the defendant's conviction.

Based on *Hubbard*, Defendants in the case at hand assert that even assuming, *arguendo*, that they impeded the receiver's investigation and the SEC's Texas Action lawsuit, at most, they interfered with the court, which does not constitute an agency or department of the United States; they did not obstruct an SEC proceeding. As the court in *Hopper* reasoned when explaining why the *Hopper* defendants could not successfully rely upon *Hubbard* to establish that "they may have obstructed a judicial proceeding, but not a 'department' or 'agency' of the United States" under Section 1505, however,

> *Hubbard* is distinguishable. In *Hubbard*, the defendant made false representations in papers filed in a bankruptcy proceeding and was indicted under 18 U.S.C. § 1001. Section 1001 criminalizes the making of false statements or similar conduct "in any manner within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001. The Supreme Court held that a court is not a department or agency, and therefore that submitting false documents to a bankruptcy court did not violate § 1001. *Hubbard*, 514 U.S. at 715 [115 S.Ct. 1754]. However, in *Hubbard*, the only government entity involved was the bankruptcy court, and the only activity was the bankruptcy proceeding. The false statements did not, therefore, have the "natural and probable" effect of interfering with proceedings before a department or agency. Conversely, in this case, the IRS was a

party to the judicial proceeding, and the phony warrant had the "natural and probable" effect of obstructing collection of delinquent taxes by the IRS. Additionally, enforcement of tax liens by the IRS is an IRS proceeding. The fact that the IRS was required to enforce its lien in federal court does not change the IRS's involvement. It was an IRS tax lien, prosecuted by an Assistant United States Attorney representing the IRS, and any money collected would have been paid to the IRS. . . .

177 F.3d at 831. As the *Hopper* analysis demonstrates, *Hubbard* does not stand for the proposition that any activity resulting from a court action can never constitute a part of an agency or department "proceeding" under Section 1505. Rather, *Hubbard's* significance rests in its holding that where no agency is involved in a court matter, no "department" or "agency" participates.

Here, however, as in *Hopper* but unlike in *Hubbard*, the pending case involves an agency in the underlying court action. Indeed, in both *Hopper* and the case at hand, the agency that initiated the lawsuits is the agency whose proceeding the indictment charges the various defendants with obstructing. More specifically, in this case, the SEC instituted the lawsuit in the Texas Action for the purpose of, among other goals, accomplishing the appointment of a receiver to assist the SEC in its investigation by protecting SFG's assets and preparing for distribution of them to victims of the alleged fraud. Thus, just as the Reeds' activities in *Hopper* had the "natural and probable" consequence of interfering with the IRS's proceeding to collect a tax, obstructing the receiver's inquiry would result in the "natural and probable" consequence of interfering with the SEC's investigatory proceeding that was based, at least in part, on information obtained by the receiver. Because *Hubbard* is readily

distinguishable from the facts in the instant matter, Defendants' invocation of *Hubbard* cannot render unviable the Government's theory of prosecution.

Finally, Defendants direct the Court to the legislative history of Section 1505, and, specifically, to the District of Columbia Circuit's discussion of it in *United States v. Poindexter*, 951 F.2d 369 (D.C.Cir.1991), *superseded in part by statute on other grounds*, 18 U.S.C. § 1515(b). In *Poindexter*, Poindexter was convicted of, among other charges, two counts of violating 18 U.S.C. § 1505 stemming from Poindexter's testimony before Congress. He challenged the Section 1505 convictions, arguing that the term "corruptly" that appears in the statute was unconstitutionally vague as applied to Poindexter's alleged conduct. In attempting to discern the meaning of "corruptly" in Section 1505, the District of Columbia Circuit reviewed the legislative history resulting in the enactment of Section 1505. During the course of this discussion, the court noted that "[t]he terms of § 1505 were borrowed from [Section 241,] a 1909 statute that has since become § 1503." 951 F.2d at 380. Section 241 made it a crime to

> corruptly ... endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner, in the discharge of his duty, or who corruptly ... shall influence, obstruct, or imepde [sic], or endeavor to influence obstruct, or impede, the due administration of justice therein.

*Id.* (quoting Act of March 4, 1909, ch. 321, § 135, 35 Stat. 1113 (1909) (emphases in *Poindexter* omitted)). In 1940 Congress enacted Section 241(a). According to the District of Columbia Circuit's survey of the legislative history,

> The Senate and House Reports and the floor debates concerning § 241(a) focused almost exclusively upon the need to protect witnesses. Both reports state that the
>
>> proposed legislation simply extends the protection now provided by law for witnesses in Court proceedings [under § 241], to witnesses in proceedings before either House of Congress or committees of either House (or joint committees), and to witnesses in proceedings before administrative agencies of the Government. The need of outlawing intimidation and corruption applies to every witness.

*Id.* at 381 (quoting H.R.Rep. No. 1143, 76th Cong., 1st Sess. 1 (1939); S.Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939)).

Defendants contend that *Poindexter's* recitation of the legislative history of Section 1505 demonstrates that Section 1505 cannot apply where, as here, Defendants' alleged obstruction occurred before a receiver appointed by a court in a lawsuit because the receiver's activities constitute "court proceedings" covered by Section 241 and, subsequently, by Section 1503, not "proceedings" under Section 1505. Even taking the *Poindexter* comments at face value, however, they do not preclude the Government's theory of the case.

Contrary to the suggestion of the legislative history of Section 241(a), that statute did more than "simply extend[ ] the protection now provided by law for witnesses in Court proceedings [under § 241], to witnesses in proceedings before either House of Congress or committees of either House (or joint committees), and to witnesses in proceedings before administrative agencies of the Government." Not only does this description of the statute fail to acknowledge Section 241(a)'s prohibition against

impeding "the due and proper administration of the law under which ... [a] proceeding is being had ...," *Poindexter,* 951 F.2d at 380–81 (quoting Act of Jan. 14, 1940, ch. 1, § 135(a), 54 Stat. 13 (1940)), but it does not so much as suggest a definition for the term "proceeding" as that word is used in Section 241(a), and, subsequently, in Section 1505.[4] Thus, the legislative history of Section 1505 does not contradict the *Senffner* and *Hopper* Courts' construction of "proceeding." As a result, *Poindexter* does not support Defendants' proposed construction of "proceeding" in Section 1505.

### 2. The Sufficiency of the Indictment

Having found the Government's legal theory to be sound, the Court now addresses whether the Superseding Indictment sufficiently alleges the crime that the United States argued to the Court on October, 23, 2009, Defendants committed. Defendants seek dismissal of the Superseding Indictment pursuant to Rule 12, Fed.R.Crim.P., and the Due Process Clause.[5] Accordingly, the Court begins with a review of the standards applicable to determination of a motion to dismiss an indictment. Rule 12, Fed.R.Crim.P., in relevant part, requires a defendant to raise before trial any motions "alleging a defect in the indictment ...—but at any time while the case is pending, the court may hear a claim that the indictment ... fails to invoke the court's jurisdiction or to state an offense."

In this case, Defendants contend that the Superseding Indictment fails to state the offenses charged with sufficient particularity. The sufficiency of an indictment presents a legal question. *United States v. Pendergraft,* 297 F.3d 1198, 1204 (11th Cir.2002) (citing *United States v. Steele,* 178 F.3d 1230, 1233 (11th Cir. 1999)). In resolving this legal question, a court must determine an indictment's sufficiency by looking solely to the face of the indictment. *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir.1992). A court may not take into account the sufficiency of the evidence supporting the indictment when ruling on a motion to dismiss, as no summary judgment procedure exists in criminal cases.[6] *Id.; United States v. Sal-*

---

**4.** Indeed, any reference by the District of Columbia Circuit in *Poindexter* to the term "proceeding," at best, constitutes *dicta* in an opinion that did not purport to address the scope of the term "proceeding" appearing in Section 1505. Rather, the District of Columbia Circuit addressed the entirety of its legislative history discussion towards construing the meaning of the term "corruptly." At no time did the court explore the meaning of "proceeding" appearing in Section 1505; in fact, unlike the present case, the challenged conduct in *Poindexter* occurred not during the course of a proceeding involving an "agency" or "department," but rather, before the Congress.

**5.** In their original Motion to Dismiss, Defendants also sought dismissal pursuant to Rules 4, 12, and 65(d)(1)(C), Fed.R.Civ.P., and 28 U.S.C. § 754. Defendants sought dismissal under these authorities in addition to the ones noted above because they construed the Su-

perseding Indictment to charge them with crimes pertaining to obstruction of the Texas Action and orders. These authorities have no relationship to Defendants' Motion to Dismiss as it relates to Defendants' contention that the Superseding Indictment fails to charge properly that Defendants engaged in crimes in connection with an SEC proceeding. As the Government does not defend its Superseding Indictment on the basis that it charges Defendants with crimes relating to obstruction of the Texas Action and orders, the Federal Rules of Civil Procedure and Section 754 no longer have any possible bearing on the analysis of Defendants' Motion.

**6.** Instead, a defendant may test the factual sufficiency of the Government's case by a motion for acquittal under Rule 29, Fed. R.Crim.P. *See United States v. Salman,* 378 F.3d 1266, 1268 (11th Cir.2004) (citing *United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir.2000)).

*man,* 378 F.3d 1266, 1268–69 (11th Cir. 2004) (quoting *Critzer,* 951 F.2d at 307).

In light of these considerations, the Court turns to Rule 7, Fed.R.Crim.P., which sets forth the requirements for an indictment. Rule 7(c) provides, in relevant part, "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." Taking these standards into account, the Eleventh Circuit has previously described as "legally sufficient" an indictment that " '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.' " *United States v. Jordan,* 582 F.3d 1239, 1245 (11th Cir.2009) (quoting *United States v. Woodruff,* 296 F.3d 1041, 1046 (11th Cir.2002)).

In this regard, "if the indictment tracks the language of the statute, 'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.' " *United States v. Bobo,* 344 F.3d 1076, 1083 (11th Cir.2003) (quoting *United States v. Sanchez,* 269 F.3d 1250, 1314 (11th Cir.2001) (*en banc* )). Nevertheless,

> "[T]he cynically technical approach which formerly enshrouded the consideration of even the plainest and simplest indictments, and, in many instances, made a mockery of simple justice, no longer governs their consideration. On the contrary, the trial court and [the appellate court] are enjoined to, and do, examine into, and determine, the validity of attacks upon indictments . . . from the

broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding." *Parsons v. United States,* 189 F.2d 252, 253 (5th Cir.1951) (footnotes omitted). Although indictments must be specific and precise as to the acts and crime charged, the law does not compel a ritual of words. *United States v. Purvis,* 580 F.2d 853, 857 (5th Cir.1978); [7] *see also id.* (quoting *United States v. Gold,* 743 F.2d 800, 813 (11th Cir.1984)); (*United States v. Markham,* 537 F.2d 187, 192 (5th Cir.1976)) (court should read the indictment as a whole and endow it with a " 'common sense construction' "); *Jordan,* 582 F.3d at 1244–46 (citing *Gold,* 743 F.2d at 812) (court must determine an indictment's validity "by practical, not technical, considerations").

Despite these helpful guideposts, a court must always keep in mind the causes that these standards serve. More specifically, these considerations are designed to ensure an indictment's compliance with the Sixth Amendment's requirement to put the defendant on notice of the nature and cause of the accusation and the Fifth Amendment's guarantees of due process and return of a grand jury indictment only after a finding of probable cause to support all of the necessary elements of the crime. *See United States v. Fern,* 155 F.3d 1318, 1325 (11th Cir.1998) (citing *United States v. Gayle,* 967 F.2d 483, 485 (11th Cir.1992) (*en banc* )).

Beginning with the framework recognized most recently by the Eleventh Circuit in *Jordan,* 582 F.3d at 1244–46, the Court considers whether the Superseding Indictment in this case " '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to

---

**7.** Pursuant to *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), opinions of the

Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" In this case the Superseding Indictment charges two substantive offenses and one conspiracy to commit the two substantive crimes. The Court starts its analysis with the substantive crimes charged.

*A. Count 2*

 Count 2 of the Superseding Indictment charges a violation of 18 U.S.C. § 1505. This crime includes three elements: (1) a proceeding must have been pending before a department or agency of the United States; (2) the defendant must have been aware of the pending proceeding; and (3) the defendant must have intentionally tried to corruptly influence, impede, or obstruct the pending proceeding. *United States v. Price,* 951 F.2d 1028, 1031 (9th Cir.1991) (citing *United States v. Sutton,* 732 F.2d 1483, 1490 (10th Cir.1984); *United States v. Laurins,* 857 F.2d 529, 536–37 (9th Cir.1988)); *see also United States v. Quattrone,* 441 F.3d 153, 174 (2d Cir.2006); Ian M. Comisky, & Lawrence S. Feld, Steven M. Harris, *Tax Fraud and Evasion* ¶ 5.08, 1999 WL 668629, *6. Defendants do not suggest that the United States has inadequately tracked the statutory language; instead, they urge the Court to find that the Superseding Indictment does not adequately plead that the pending proceeding consists of the continuing SEC investigation.

First, the Court independently evaluates whether Count 2 adequately avers each of the elements of Section 1505. In this regard, Count 2 alleges with respect to the first element, that "a pending proceeding was being had before the United States Securities and Exchange Commission, an agency of the United States." *See* D.E. 29 at 11, Count 2, ¶ 2. Thus, at least on its face, the Superseding Indictment alleges

the first element of a Section 1505 violation.

With respect to the second element of the Section 1505 violation, Count 2 adopts the allegations contained earlier in the Superseding Indictment that aver that Defendant Perraud opened a February 17, 2009, e-mail from the receiver "alerting [of].. the SEC investigation and lawsuit, as well as the court order appointing the [r]eceiver," and he then made a telephone call to Defendant Raffanello in which Perraud "communicated the contents of the Receiver's e-mail and the court order" to Raffanello [D.E. 29 at 4, ¶ 11 and at 8, ¶¶ 19 and 20]. These allegations effectively assert that both Defendants were aware of "the SEC investigation and lawsuit, as well as the court order appointing the [r]eceiver."

To sufficiently plead the third element of a Section 1505 violation, the Government must have alleged effectively that Defendants intentionally tried to corruptly influence, impede, or obstruct the pending proceeding. This element carries with it a "nexus" requirement that a defendant have intended to obstruct the particular pending proceeding identified in connection with the first and second elements of a Section 1505 violation. *See Quattrone,* 441 F.3d at 174 (applying "nexus" requirement discussed earlier in *Quattrone* analysis as it applies to a violation of 18 U.S.C. § 1503, to Section 1505 violation), 170–171 (explaining in context of 18 U.S.C. § 1503 violation that nexus requirement demands a showing that the defendant have knowledge that his actions "are likely to affect the judicial proceeding"). More specifically, the action taken by a defendant under the third element "must be with an intent to influence" the pending proceeding identified under the first and second elements.

Here, the Superseding Indictment does not expressly allege that Defendants knew

that they were obstructing the pending SEC proceeding described in other paragraphs of the Superseding Indictment. That fact, however, does not necessarily sound the death knell for the Superseding Indictment. The law does not require an indictment to allege elements specifically where the charge, taken as a whole, "warrant[s] an inference that the [grand] jury found probable cause to support all the necessary elements of the [violation]...." *Fern*, 155 F.3d at 1325. Thus, the question becomes whether the Superseding Indictment contains enough allegations to justify the conclusion that the grand jury found probable cause that Defendants knew that the receiver's actions that they were allegedly obstructing were in furtherance of an SEC proceeding.

In considering this issue, the Court focuses on the allegations contained within Paragraphs 7, 11, 13, and 16 of Count 1, incorporated by reference into Count 2. These allegations provide as follows:

7. On or about February 16, 2009, *based on the application of the SEC,* the [Texas court in the Texas Action] issued an order appointing an individual, known as a receiver ... to, among other things, exercise exclusive possession, custody, and control of SFG and its affiliated entities and to trace and identify assets in order to return deposits to defrauded investors.

11. On or about February 17, 2009, the [r]eceiver sent an electronic mail ... message addressed to "SFGC Global–All Employees," which included all SFG employees, *alerting them to the SEC investigation and*

*lawsuit, as well as the court order appointing the [r]eceiver.*

13. On or about the evening of February 25, 2009, a representative of the [r]eceiver ... arrived at SFG's Fort Lauderdale office *for the purpose of fulfilling the mandates of the Orders issued by the [Texas Court in the Texas Action].*

16. It was part of the conspiracy that, after learning that all documents and records of SFG and its affiliated entities were ordered to be preserved and that SFG employees were *ordered to cooperate with the SEC and the [r]eceiver,....*

D.E. 29 (emphasis added).

A review of these allegations reveals that the Superseding Indictment comes very close to alleging enough facts to support the conclusion that the grand jury found probable cause that Defendants knew that the receiver's actions that they were allegedly obstructing were in furtherance of an SEC proceeding. But we are not playing horseshoes, and "close" does not satisfy the standard. While the assertions in Paragraph 7 show that the Texas court appointed the receiver at the SEC's request, the allegation continues by noting that the receiver was appointed to exercise "*exclusive* possession, custody, and control of SFG and its affiliated entities and to trace and identify assets in order to return deposits to defrauded investors." D.E. 29 at Count 1, ¶ 7 (emphasis added). Standing alone, such an allegation suggests that the receiver was working on his (and the Texas court's) own behalf and not in furtherance of anyone else's goals,[8] including those of the SEC. Moreover, Paragraph 13 mentions only that the receiver appeared

---

**8.** A receiver is an arm of the court. *See, e.g., Crites, Inc. v. Prudential Ins. Co. of America,* 322 U.S. 408, 414, 64 S.Ct. 1075, 88 L.Ed. 1356 (1944) (involving a receiver in a bankruptcy proceeding); *see also SEC v. Loving*

*Spirit Foundation, Inc.,* 392 F.3d 486, 490 (D.C.Cir.2004) ("Neither a plaintiff nor a defendant, the receiver functions as an arm of the court") (citation omitted).

at SFG's Fort Lauderdale offices on February 26, 2009, "for the purpose of fulfilling the mandates of the Orders issued by the [Texas Court in the Texas Action] without identifying any more specifically what those "mandates" included.

Although we know from reading the order appointing the receiver that the order required the receiver to "[p]romptly provide the [SEC] and other governmental agencies with all information and documentation they may seek in connection with its regulatory or *investigatory* activities," D.E. 64–5 at ¶ 5(k) (emphasis added), this information appears nowhere on the face of the Superseding Indictment, and the Court is limited to the four corners of the Superseding Indictment in evaluating the sufficiency of the charging instrument. *Critzer*, 951 F.2d at 307. Paragraphs 11 and 16 nearly make the point, but they stop just short of it. By averring that the receiver alerted SFG employees "to the SEC investigation and lawsuit, as well as the court order appointing the [r]eceiver," D.E. 29 at Count 1, ¶ 11, and that SFG employees were "ordered to cooperate with the SEC and the [r]eceiver, *id.* at Count 1, ¶ 16, the Superseding Indictment effectively alleges that Defendants had knowledge of the SEC investigation, lawsuit, and court order appointing the receiver and even of the fact that the SEC and the receiver were each engaged in activity relating to the Texas Action. Nowhere, however, does the Superseding Indictment specifically tie the receiver's investigation to the SEC's proceeding. In other words, the mere fact that the receiver alerted Defendants to an SEC investigation in the course of an e-mail where he also discussed his own investigation does not, in

and of itself, necessarily suggest that the receiver was turning over information he collected to the SEC in furtherance of the SEC's investigation.[9] Thus, while the Superseding Indictment adequately pleads that Defendants had knowledge of an investigation that the receiver was conducting, as well as knowledge of an investigation in which the SEC was engaged, it does not assert that Defendants knew that when they allegedly obstructed the receiver's investigation, they were also interfering with the SEC's proceeding.

This problem echoes that of the indictment involved in *United States v. Sunia*, 643 F.Supp.2d 51 (D.D.C.2009). In *Sunia*, the Office of Inspector General of the United States Department of Education ("DOE–IG") began an investigation into activities involving the defendants. The Office of Inspector General of the United States Departments of the Interior and Homeland Security ("DOI–IG" and "DHS–IG," respectively), as well as the Federal Bureau of Investigation ("FBI") also assisted in DOE–IG's investigation. During the course of the investigation, one defendant submitted to an interview with agents from DHS–IG and the FBI, where he allegedly made materially false and misleading statements leading to the indictment in *Sunia*. As in the case before this Court, the defendants in *Sunia* were charged with, among other offenses, violations of Section 1505.

The *Sunia* defendants challenged the sufficiency of the allegations concerning the Section 1505 violations, complaining that the indictment was fatally flawed because it did not assert that the defendants "knew or believed" that they were ob-

---

**9.** The Court does not know whether the actual e-mail from the receiver might have specified this fact. Even if it did, however, the e-mail cannot rescue the Superseding Indictment with respect to the third element of a Section 1505 violation where the Superseding Indict-

ment does not refer to any such statement within the receiver's e-mail. *See Critzer*, 951 F.2d at 307 (11th Cir.1992) (the sufficiency of an indictment must be determined by reference to the face of the indictment alone).

structing an investigation by the specific agency whose proceeding they allegedly impeded. 643 F.Supp.2d at 76–78. In this regard, the indictment alleged that the defendant submitted to a voluntary interview with federal law enforcement agents from DHS–IG and the FBI, and it mentioned that a proceeding "was pending before the [DOE]," *see id.* at 79, but it never pled any facts averring or even suggesting that the defendants knew when the DHS–IG and FBI agents interviewed them that these agents were doing so in furtherance of a DOE investigation and proceeding. Thus, while the *Sunia* Court recognized the principles that it must read the indictment as a whole and in a common-sense way, and further, that an element may be inferred from the entirety of the indictment, the court found,

> Ultimately, there are no allegations in the indictment from which one could infer that the defendants ever knew of the origin of the investigation for which they were interviewed, and thus no allegations giving rise to an inference that the defendants knew that they were obstructing a United States Department of Education proceeding as required to allege an offense under § 1505.

*Id.* at 80.

Moreover, when the Government attempted to salvage the indictment by directing the court to the fact that one of the DHS–IG agents who interviewed the defendants had, to the defendants' knowledge, previously served as a DOE employee assigned to the agency's investigation in the case and was actually completing her DOE work on that investigation when she interviewed the defendants, the court observed,

> These facts ... are not alleged in the indictment; consequently, the Court cannot say with any degree of certainty that 'a group of [the defendants'] fellow

citizens' found these allegations to be probably true, *Stirone* [*v. United States*], 361 U.S. [212,] 218, 80 S.Ct. 270 [4 L.Ed.2d 252 (1960) ] ..., but instead would have to 'guess as to what was in the minds of the grand jury at the time they returned the indictment,' *Russell* [*v. U.S.*], 369 U.S. [749] at 770, 82 S.Ct. 1038 [8 L.Ed.2d 240 (1962) ].... Such an exercise is not permitted by the Fifth Amendment.

*Id.* Finding that the Government failed in the *Sunia* indictment to "allege facts supporting the threshold requirement that the defendant knew about the agency proceeding arising under 'the law' that he 'corruptly endeavor[ed]' to obstruct," *id.* at 80, the court dismissed these counts in the indictment. *Id.*

The pending matter bears substantial similarity to *Sunia*. In the case at hand, the receiver acted much like the FBI and DHS–IG agents in *Sunia*. Just as the FBI and DHS–IG agents were collecting information for the DOE proceeding that the *Sunia* indictment charged the *Sunia* defendants with obstructing, the receiver in the instant case was gathering materials for, among other purposes, the SEC's continuing investigation, the pending proceeding that Defendants are charged with impeding in this case. Yet, while the charging instruments in both *Sunia* and the instant case both mention the pending proceedings allegedly obstructed by the defendants in each case, nowhere do the charging instruments assert facts sufficient to infer that the defendants in either case knew they were interfering with the particular proceedings allegedly being obstructed when the *Sunia* defendants allegedly lied to the FBI and DHS–IG agents, and Defendants in the case at hand allegedly shredded documents contrary to the receiver's instructions, respectively.[10] Thus, the Superseding In-

---

**10.** Nor can the receiver's investigation in its own right satisfy the "proceeding" require-

dictment in this case does not sufficiently allege the third element of a Section 1505 violation, more specifically, that Defendants knew when they allegedly interfered with the receiver's investigation that they were obstructing an SEC proceeding as well. Accordingly, Count 2 of the Superseding Indictment fails to pass muster under the Fifth Amendment and should be dismissed.

### B. Count 3

■ The Court now considers the adequacy of Count 3 of the Superseding Indictment. While the Court has been unable to find a case that breaks down 18 U.S.C. § 1519 into discrete elements that do not merely parrot the statutory language, based on a review of the statute and the cases interpreting it, the Court finds that the elements of a Section 1519 violation include (1) an investigation or other matter within the jurisdiction of a department or agency of the United States must have been pending or contemplated by such department or agency of the United States; (2) the defendant must have been aware of the pending or contemplated matter or investigation; and (3) the defendant must have knowingly altered, concealed, mutilated, or destroyed something with the intent to impede, obstruct, or influence the pending or contemplated matter or investigation, or any matter in relation to the pending or contemplated matter or investigation. *See* 18 U.S.C. § 1519; *United States v. Hoffman–Vaile,* 568 F.3d 1335, 1343 (11th Cir.2009); *United States v. Lessner,* 498 F.3d 185, 196 (3d Cir.2007).

In reviewing the Superseding Indictment for assertions alleging these elements, the Court finds that the United States has satisfied its burden. First, the

ment in the first element of a Section 1505 violation. Indeed, the Government does not

Superseding Indictment successfully pleads that an SEC investigation was pending. In this regard, the charging language of Count 3 expressly alleges that Defendants destroyed documents with the intent to obstruct a matter "within the jurisdiction of ... the [SEC]" and that they knew that the records that they allegedly disposed of were ordered to be preserved "in connection with an SEC investigation and lawsuit." *See also* D.E. 29 at 12, ¶ 2. Moreover, Count 3 incorporates by reference several of the allegations from Count 1, including those that aver that the SEC filed a complaint against SFG in the Texas Action (D.E. 29 at 2, ¶ 6), and that the receiver sent an e-mail to all SFG employees "alerting them to the SEC investigation and lawsuit" (*id.* at 4, ¶ 11); *see also id.* at 7, ¶ 16 (alleging that after Defendants learned that "all documents and records of SFG and its affiliated entities were ordered to be preserved and that SFG employees were ordered to cooperate with the SEC and the [r]eceiver," Defendants destroyed documents and refused to provide the receiver's representative with information).

Similarly, the Superseding Indictment sufficiently pleads that Defendants were aware of the SEC proceeding. As explained previously in relation to the second element of Count 2, the Superseding Indictment adequately alleges that Defendants were aware of the SEC proceeding. *See* D.E. 29 at 11, Count 3, ¶ 1 (incorporating by reference ¶¶ 1–14 and 16–27 of Count 1), and at 4, ¶ 11, and 8, ¶¶ 19 and 20 (averring that Defendant Perraud opened a February 17, 2009, e-mail from the receiver "alerting [of].. the SEC investigation and lawsuit, as well as the court order appointing the [r]eceiver," and

suggest to the contrary.

he then made a telephone call to Defendant Raffanello in which Perraud "communicated the contents of the Receiver's e-mail and the court order" to Raffanello).

That leaves the third element. Unlike Count 2, however, Count 3 alleges violation of Section 1519, which is drafted in "broad" terms. *Hoffman–Vaile*, 568 F.3d at 1343. In construing Section 1519, the Eleventh Circuit has emphasized the language " 'in relation to or contemplation of' any matter 'within the jurisdiction of any department' or agency of the United States[.]' " *Id.*, 568 F.3d at 1343. In *Hoffman–Vaile*, for example, the Eleventh Circuit considered the case of a dermatologist who allegedly instructed employees to remove photographs from files subpoenaed by a grand jury. As the Eleventh Circuit described the facts of the case, the proceedings of the grand jury were related to an investigation of Medicare fraud being conducted by the Department of Health and Human Services ("HHS"). Hoffman–Vaile argued that her conviction for obstruction of justice under Section 1519 must reversed because Section 1519 does not apply to a violation of a subpoena issued by a grand jury, but instead pertains only to agency and department proceedings, categories into which the grand jury does not fall.

The Eleventh Circuit rejected Hoffman–Vaile's position, relying in particular upon the language "in relation to or contemplation of" appearing in Section 1519. Noting that this phrase "encompasses actions that have 'a connection with or reference to' an investigation by a federal agency," *Id.* at 1343 (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)), the Eleventh Circuit concluded that even though the grand jury is not a department or agency of the United States, Hoffman–Vaile's alleged obstruction of the grand jury satisfied the third element of Section 1519 because the grand jury "subpoenaed the missing records 'in relation to or in contemplation of' " the HHS investigation. *Id.*

The pending case represents an analogous situation. Here, while the Superseding Indictment does not adequately assert that Defendants knew that when they allegedly interfered with the receiver's instructions and investigation they were also impeding the SEC proceeding, it does make enough averments to allege that Defendants knew that the receiver's actions were at least "in relation to or in contemplation of" the SEC investigation. More specifically, Count 3 on its face asserts that Defendants destroyed records "knowing that such records were ordered to be preserved by the United States District Court for the Northern District of Texas *in connection with an SEC investigation and lawsuit,* that is, [the Texas Action]. . . ." D.E. 29 at Count 3, ¶ 2 (emphasis added). In addition, the incorporated paragraphs of Count 1 allege that the Texas Action court appointed the receiver "based on the application of the SEC." *Id.* at 3, ¶ 7. The Superseding Indictment further asserts that the receiver sent an e-mail message, the contents of which Defendants were aware, that "alert[ed] . . . to the SEC investigation and lawsuit, as well as the court order appointing the [r]eceiver." *Id.* at 4–5, ¶ 11. Other allegations contained within the Superseding Indictment likewise discuss the SEC investigation in the same breath as reference to the receiver. *See, e.g., id.* at 7, ¶ 16 ("SFG employees were ordered to cooperate with the SEC and the [r]eceiver"). Although these allegations do not aver that the receiver was effectively working on behalf of the SEC proceeding when he sought to collect records and information, they need not in order to make out a violation of Section 1519. Instead, they must allege enough only to establish that the receiver's activities occurred "in relation to" the SEC proceeding. Here, where the Superseding

Indictment expressly asserts that the Texas court appointed the receiver in the SEC's Texas Action and pursuant to the SEC's request and that the receiver was working in furtherance of the Texas court's order when it sought to preserve documents and collect information, the Superseding Indictment adequately accomplishes this goal. Because the Superseding Indictment pleads sufficient allegations to cover each of the elements of a Section 1519 violation, Defendants' Motion to Dismiss should be denied as it pertains to Count 3 of the Superseding Indictment.

### C. Count 1

■ Finally, the Court considers the sufficiency of the allegations contained within Count 1 of the Superseding Indictment. To assert a violation of 18 U.S.C. § 371 successfully, a charging instrument must allege the following elements of the crime of conspiracy: (1) an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) an overt act in furtherance of the conspiracy. *United States v. U.S. Infrastructure, Inc.,* 576 F.3d 1195, 1203 (11th Cir.2009).

In the instant case, the Superseding Indictment adequately alleges a § 371 violation with respect to that portion of Count 1 that charges a conspiracy to violate Section 1519, but it fails to do so with regard to the remaining part of Count 1, which alleges a conspiracy to transgress Section 1505. Beginning with the conspiracy to violate Section 1519, the Superseding Indictment specifically asserts that Defendants agreed with each other and with others to destroy records with the intent to obstruct a matter within the jurisdiction of the SEC and in relation to and contemplation of such matter. *See* D.E. 29 at 6–7, ¶¶ 15, 15(b). In this regard, the Court notes that, as discussed previously, the Superseding Indictment adequately alleges that Defendants had knowledge that the

receiver was acting "in relation to" the SEC's proceeding. Thus, the Court is warranted in concluding that the grand jury found that Defendants agreed to the particular object of the conspiracy alleged by the portion of Count 1 that charges the conspiracy to violation Section 1519.

Similarly, as it regards the second element of the conspiracy to violate Section 1519, the Superseding Indictment avers that Defendants "willfully, ... with the intent to further the objects of the conspiracy," participated in the conspiracy. For the same reasons mentioned in regard to the discussion of the first element of conspiracy, as well as for the reasons that Count 3 stands, the Superseding Indictment satisfies the second element. Finally, the section of Count 1 entitled "OVERT ACTS" enumerates eleven acts that Defendants allegedly committed "[i]n furtherance of the conspiracy, and to achieve the objects thereof. . . ." D.E. 29 at 8–10. These contentions, which include among them, allegations concerning shredding of documents, adequately fulfill the requirement that the Superseding Indictment allege an overt act in furtherance of the conspiracy to violate Section 1519's prohibition on the destruction of evidence in relation to any matter within the jurisdiction of an agency or department of the United States.

Turning to Count 1 as it asserts a conspiracy to violate Section 1505, the Court finds that this aspect of the conspiracy count must fail for the same reasons that Count 2 suffers from a fatal flaw. More specifically, if, as explained previously, the Superseding Indictment does not sufficiently allege that Defendants knew when they allegedly interfered with the receiver's investigation that they were simultaneously impeding an SEC proceeding, the Court cannot justifiedly conclude that the grand jury found probable cause that Defendants agreed to obstruct an SEC pro-

ceeding when they allegedly conspired to impede the receiver's investigation. Consequently, the aspect of Count 1 charging a conspiracy to violate Section 1505 cannot survive Defendants' Motion to Dismiss.

### Conclusion

For the foregoing reasons, I respectfully recommend that the Court grant in part and deny in part Defendants' Motion to Dismiss [D.E. 64]. In particular, I recommend that the Court grant Defendants' Motion to Dismiss as it pertains to Count 2 (the 18 U.S.C. § 1505 violation) and the part of Count 1 charging Defendants with conspiring to commit a violation of Section 1505. In all other respects, I recommend that the Court deny Defendants' Motion to Dismiss.

The parties shall have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[11] 28 U.S.C. § 636(b)(1).

FILED AND SUBMITTED at Fort Lauderdale, Florida, this 2nd day of November, 2009.

---

**11.** Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir.1982).