[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-12629

_____

D. C. Docket No. 05-00307-CR-T-24-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARSHA LYNN HOFFMAN-VAILE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 27, 2009)

Before BLACK, PRYOR and COX, Circuit Judges.

PRYOR, Circuit Judge:

The main question presented by this appeal is whether a person who alters

records that have been subpoenaed by a grand jury obstructs an investigation of

Medicare fraud. See 18 U.S.C. § 1519. Dr. Marsha Lynn Hoffman-Vaile appeals her convictions and sentences on charges of health care fraud, filing false claims, and obstruction of justice. We conclude that section 1519 governs Dr. Hoffman-Vaile's alteration of the records subpoenaed by the grand jury because the proceedings of the grand jury were related to an investigation of Medicare fraud by the Department of Health and Human Services. We affirm Dr. Hoffman-Vaile's convictions and sentences, except that we vacate the forfeiture money judgment and remand to the district court for recalculation of the forfeiture amount.

## I. BACKGROUND

Dr. Marsha Lynn Hoffman-Vaile is a dermatologist who practiced in Florida and regularly sought reimbursement from Medicare for surgical procedures she performed on her patients. Dr. Hoffman-Vaile submitted her Medicare claims to First Coast Service Options, a private contractor that administers the Medicare program in Florida. First Coast reviewed the claims prepared by Dr. Hoffman-Vaile and approved payments to her based on the Current Procedural Terminology Code that she identified on each claim. First Coast regularly reviewed claims submitted by physicians and code usage to detect unusual diagnosis patterns or statistical anomalies that might suggest fraudulent billing.

During a post-payment review in 1999, First Coast noticed that Florida

2

dermatologists, including Dr. Hoffman-Vaile, were billing Medicare at an "aberrant" rate under billing code 14300, which is for a surgical procedure known as an adjacent tissue transfer or rearrangement that measures more than 30 square centimeters and is unusual or complicated. The procedure is performed after the removal of a lesion or other defect under the skin, where the surgeon uses more than one side of a wound to create a skin flap to close the wound. The procedure is used to preserve the function of a body part, avoid critical structures, and minimize scarring or disfigurement.

On August 10, 1999, First Coast notified Dr. Hoffman-Vaile by letter that it was conducting a focused medical review of the increased claims filed under billing code 14300 and requested that Dr. Hoffman-Vaile produce medical records. Dr. Hoffman-Vaile produced the records and copies of photographs from the patient files. Cynthia Dangerfield, the First Coast employee who conducted the review, was concerned that the individual patient records were too similar and that the anatomical sites appeared to be too small for surgical procedures under billing code 14300.

In October 1999, First Coast sent another letter to Dr. Hoffman-Vaile that mentioned the billing anomaly and requested medical records, photographs, and information about the size and cause of the original wounds. Dr. Hoffman-Vaile

3

produced the records, but not the photographs. During the review, First Coast determined that from 1993 through 1999, Dr. Hoffman-Vaile billed Medicare under code 14300 more often and for greater amounts than under any other billing code. Dr. Hoffman-Vaile also submitted claims more often and for greater amounts under code 14300 than any other physician in Florida during the first halves of 1998 and 1999.

In December 1999, Dangerfield prepared a report about the focused medical review and recommended that First Coast conduct a comprehensive medical review of Dr. Hoffman-Vaile because "she [was] much higher in terms of allowed dollars and numbers of claims than all other providers reviewed" and appeared to have a "coding and/or billing issue." The report stated that Dr. Hoffman-Vaile "may potentially be referred to the Fraud Unit" but recommended no action. Dangerfield also recommended that First Coast publish an educational article in the Medicare newsletter in Florida and send educational letters to the providers with high rates of billing under code 14300. In response, First Coast published an article about the focused medical review and correct methodology for billing under code 14300 in the March/April issue of the Medicare newsletter in Florida.

On February 21, 2000, First Coast sent a letter to Dr. Hoffman-Vaile that informed her of the need for a comprehensive medical review. The letter stated

4

that the review was based on a "significant variance" in her billing patterns compared with other physicians. In response to the letter, Dr. Hoffman-Vaile produced medical records.

In May 2000, Kathy Jones, an employee of First Coast, conducted the comprehensive medical review. Jones became concerned that Dr. Hoffman-Vaile had not actually performed the surgeries that she billed to Medicare because there were discrepancies between Dr. Hoffman-Vaile's records about the sizes of lesions and the sizes recorded in pathology reports. The lesion sizes recorded by Dr. Hoffman-Vaile appeared to be too large for the anatomical sites involved in the operations. Jones also observed that the operative reports submitted by Dr. Hoffman-Vaile appeared identical for all patients.

On June 20, 2000, Jones contacted Dr. Hoffman-Vaile by telephone to discuss her billing practices and asked Dr. Hoffman-Vaile to explain the methodology that she used to select the billing code for the surgeries she performed. Dr. Hoffman-Vaile stated that she measured the initial wound and adjacent skin flap and took photographs. Jones instructed her not to measure the skin flap and requested photographs for the files involved in the review. First Coast did not receive any photographs, and on June 20, 2000, Jones contacted Betty Hill, Dr. Hoffman-Vaile's office manager, to request copies of photographs

5

for the files involved in the review. Jones also asked Hill if Dr. Hoffman-Vaile's surgical photographs included a centimeter rule, and Hill responded that they did not. Despite repeated requests for the photographs, First Coast did not receive them.

First Coast closed its comprehensive medical review and informed Dr. Hoffman-Vaile of the results. Jones called Dr. Hoffman-Vaile on June 30, 2000, and instructed her to use the correct methodology for billing code 14300, as outlined in the Medicare bulletin, and to include a centimeter rule in her surgical photographs. Dr. Hoffman-Vaile agreed to follow those instructions.

Brenda Redfern, the First Coast employee who closed the comprehensive medical review, stated in her report that First Coast suspected Dr. Hoffman-Vaile of "upcoding" her claims but decided to educate her about proper coding and billing because it had been "unable to scientifically determine [the] defect size" based on the records. On July 27, 2000, Jones sent a letter to Dr. Hoffman-Vaile that stated that Jones "found the majority [of Dr. Hoffman-Vaile's records] to have large discrepancies between the documented lesion size(s) in the operative reports and in the corresponding lesion size(s) in the pathology reports . . . [that] was too great to be ignored." Jones reminded Dr. Hoffman-Vaile to measure and record the lesion sites to "ensure proper payment is being made and [to] reduce the

6

possible recovery of any future inappropriately paid dollars." First Coast scheduled Dr. Hoffman-Vaile for reevaluation in January 2001.

In January 2001, Gloria Herring, an employee of First Coast, conducted a probe review of Dr. Hoffman-Vaile's billing practices based on continued billing anomalies. In a letter dated April 3, 2001, First Coast informed Dr. Hoffman-Vaile about this review and asked her to produce medical records. Dr. Hoffman-Vaile produced the records, but did not produce any photographs. Herring observed that all of Dr. Hoffman-Vaile's operative reports were identical, which was noteworthy because procedures billed under code 14300 were, by definition, unusual or complicated. Herring also determined that many of the documented surgical sites were too small for procedures billed under code 14300, and Herring adjusted the codes for several claims. On September 25, 2001, First Coast issued a summary report about the previous reviews of Dr. Hoffman-Vaile's billing practices and the results of the probe review. Based on the results of the probe review, First Coast requested Dr. Hoffman-Vaile repay overpayments on the adjusted claims in the amount of $716.48 and required her to obtain preapproval to use code 14300.

In May 2002, agents of the Office of Inspector General of the Department of Health and Human Services searched Dr. Hoffman-Vaile's office based on a federal search warrant for patient files associated with claims billed under code

14300. The agents seized over 3,000 files but could not locate about 300 files. The files that were seized that contained photographs formed the basis of the fraud and false claim charges against Dr. Hoffman-Vaile.

In January 2003, a federal grand jury issued a subpoena that directed Dr. Hoffman-Vaile to produce the missing files. Dr. Hoffman-Vaile produced 185 of the missing files, but the majority of the records produced lacked photographs. Dr. Hoffman-Vaile's attorneys later produced a box of loose photographs to the government.

In July 2005, the grand jury returned an indictment against Dr. Hoffman-Vaile on 44 counts of health care fraud, 18 U.S.C. § 1347, 44 counts of filing false claims, id. § 287, and one count of obstruction of justice, id. § 1519. The indictment alleged that Dr. Hoffman-Vaile defrauded Medicare by fraudulently billing 44 procedures under the 14300 code from July 27, 2000, the date that First Coast notified Dr. Hoffman-Vaile that it had completed the comprehensive medical review, to January 22, 2002, the date that First Coast assessed the overpayment and required her to obtain prepayment approval to use code 14300. The indictment also alleged that Dr. Hoffman-Vaile obstructed justice when she instructed her employees to remove photographs from the subpoenaed files.

Several employees of First Coast and Dr. Hoffman-Vaile testified at trial

about her billing practices. The First Coast employees testified about the reviews of Dr. Hoffman-Vaile, and the reports prepared by First Coast were admitted into evidence. Dr. Hoffman-Vaile's employees testified about her office procedures, that Dr. Hoffman-Vaile knew that the records were to be produced with the photographs intact, and that she instructed her employees to remove the photographs before the files were produced.

The government also introduced evidence and expert testimony about Dr. Hoffman-Vaile's increased rate of billing under code 14300. The government introduced statistical evidence that established that Dr. Hoffman-Vaile billed under code 14300 at a much higher rate than other dermatologists in Florida. Dr. Mark Nestor, an expert for the government, testified that he reviewed the 44 patient files at issue and opined that Dr. Hoffman-Vaile did not perform an adjacent tissue transfer or rearrangement during those procedures. He concluded that Dr. Hoffman-Vaile had performed a different closure technique in each of the procedures and based his opinion in part on the disfigurement of the patients in the procedures.

The jury convicted Dr. Hoffman-Vaile on all charges, and the district court sentenced her to 78 months of imprisonment, fined her $12,500, and ordered her to pay $504,068.05 in restitution and to forfeit $705,161.87 to the government. The

district court found the amount of loss was $732,473.44, which was the total amount Dr. Hoffman-Vaile billed to Medicare. The district court determined that there were 168 victims, including Medicare, private insurance companies, and patients. Based on its findings, the district court increased Dr. Hoffman-Vaile's base offense level of six by 14 levels for a loss of more than $400,000, four levels for the number of victims, two levels for abuse of a position of private trust, and two levels for obstruction of justice, which produced a total offense level of 28. Based on her category I criminal history, Dr. Hoffman-Vaile's sentencing range was 78 to 97 months of imprisonment. The district court sentenced Dr. Hoffman-Vaile to 60 months of imprisonment for each count of fraud and false claims, to be served concurrently, and 18 months of imprisonment for the obstruction conviction.

## II. STANDARDS OF REVIEW

Several standards of review govern this appeal. We review evidentiary rulings of the district court for an abuse of discretion. United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006). We review rulings to which the defendant objected under a harmless error standard, but "when a party raises a claim of evidentiary error for the first time on appeal, we review it for plain error only." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). "Plain error occurs

10

where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002). We review de novo the cumulative impact of multiple evidentiary errors, "although some of the errors might individually be reviewed for plain error." United States v. Dohan, 508 F.3d 989, 993 (11th Cir. 2007) (per curiam). We review de novo the interpretation of a statute. United States v. Johnson, 399 F.3d 1297, 1298 (11th Cir. 2005) (per curiam). "We review for clear error the district court's determination regarding the amount of loss under the Guidelines." United States v. Grant, 431 F.3d 760, 762 (11th Cir. 2005). "We review de novo the district court's legal conclusions regarding forfeiture and the court's findings of fact for clear error." United States v. Puche, 350 F.3d 1137, 1153 (11th Cir. 2003).

### III.  DISCUSSION

Our discussion is divided in four parts.  First, we address Dr. Hoffman-Vaile's challenges to the admission of some evidence at trial.  Next, we discuss whether Dr. Hoffman-Vaile obstructed the investigation into her Medicare fraud when she altered records that were subpoenaed by a grand jury.  We then address the calculation of the loss and forfeiture amounts.

*A. The Admission of the Challenged Evidence Was Not Reversible Error.*

Dr. Hoffman-Vaile challenges the admission of three kinds of evidence by the district court: (1) reports prepared by First Coast about its investigation of her billing practices; (2) the opinions of First Coast employees about her billing practices; and (3) the expert testimony of Dr. Nestor that Dr. Hoffman-Vaile deformed her patients. Because Dr. Hoffman-Vaile did not object at trial to the admission of either the reports or the testimony of First Coast employees, we review the admission of this evidence for plain error. Baker, 432 F.3d at 1202. Dr. Hoffman-Vaile objected to the admission of Dr. Nestor's testimony, and we review this admission for harmless error. Id. Dr. Hoffman-Vaile also argues that she is entitled to a new trial because the cumulative effect of these alleged errors prejudiced her. We discuss each argument in turn.

1. The Admission of the Reports Prepared by First Coast Was Not Plain Error.

Dr. Hoffman-Vaile argues that the district court plainly erred when it admitted reports prepared by First Coast because the reports should have been excluded under Federal Rule of Evidence 803(8)(B) as reports prepared by law enforcement. The reports were prepared by First Coast in the processing and reviewing of Medicare claims and were admitted as records kept in the regular course of business under Rule 803(6). Dr. Hoffman-Vaile argues that the records

12

are public reports of law enforcement personnel, which are inadmissible under Rule 803(8). "[S]tatements inadmissible as public agency reports under Rule 803(8) may not be received merely because they satisfy Rule 803(6)[;] . . . section (6) does not open a back door for evidence excluded by section (8)." United States v. Cain, 615 F.2d 380, 382 (5th Cir. 1980) (per curiam).

Any error in the admission of the reports was not plain. First Coast is a private administrator that processes and reviews claims for Medicare, and Dr. Hoffman-Vaile cites no controlling authority about the reports of a similar private entity.

The admission of the reports also did not affect Dr. Hoffman-Vaile's substantial rights. The reports were only four of over 300 exhibits that were admitted, and the evidence against Dr. Hoffman-Vaile included testimony of employees of First Coast, employees of Dr. Hoffman-Vaile, Dr. Nestor, and a federal agent. "[W]here an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990).

2. The Admission of the Opinions of Employees of First Coast Was Not Plain Error.

Dr. Hoffman-Vaile argues that the district court plainly erred when it admitted the testimony of Jones, an employee of First Coast, about her subjective

13

assessments of Dr. Hoffman-Vaile's billing practices, but we disagree. Jones's testimony, which included her repeated instructions to Dr. Hoffman-Vaile about how to bill under code 14300, was relevant to Dr. Hoffman-Vaile's intent to commit fraud and undermined her defense that she did not understand how to bill correctly under code 14300. See Fed. R. Evid. 402; United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989) ("The district court possesses broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue.").

Dr. Hoffman-Vaile argues that the testimony was not relevant "to explain what Dr. Hoffman-Vaile thought or why Dr. Hoffman-Vaile did what she did" because she was not "aware of [Jones's] opinions," but the evidence belies her contention. Dr. Hoffman-Vaile received several letters and telephone calls that informed her that First Coast was reviewing the rate at which she billed under code 14300. One letter suggested that she billed at a significantly higher rate than other dermatologists in Florida, and another letter repeatedly referenced discrepancies between Dr. Hoffman-Vaile's documentation and the pathology reports in the files. Jones personally spoke to Dr. Hoffman-Vaile and instructed her on the correct methodology for billing under code 14300. First Coast also requested a repayment for overbilling under code 14300 and required her to obtain preapproval for use of code 14300. Dr. Hoffman-Vaile was on notice of the opinions of First Coast

14

employees, including Jones, that she was overbilling Medicare under code 14300. Jones's testimony about Dr. Hoffman-Vaile's billing practices, which was based on Jones's review of the records and her interactions with Dr. Hoffman-Vaile, was helpful to the jury and "relevant to the issues presented in the case." See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003); Fed. R. Evid. 701. The district court did not plainly err when it admitted Jones's testimony.

### 3. The Admission of Expert Testimony by Dr. Nestor Was Not an Abuse of Discretion.

Dr. Hoffman-Vaile argues that the district court abused its discretion when it allowed Dr. Nestor to testify that Dr. Hoffman-Vaile's procedures disfigured some of her patients because the testimony was irrelevant, but we disagree. Dr. Nestor testified that adjacent tissue transfers or rearrangements are used to limit disfigurement or deformation when a lesion is removed. His testimony that some of the photographs in Dr. Hoffman-Vaile's patient files showed disfigurement was relevant to whether Dr. Hoffman-Vaile performed the procedures that she billed to Medicare. Fed. R. Evid. 402. The district court did not abuse its discretion when it admitted Dr. Nestor's testimony.

15

## 4. The Admission of the Challenged Evidence Did Not Amount to Cumulative Error.

Dr. Hoffman-Vaile argues that the cumulative effect of these alleged errors deprived her of her right to a fair trial, but this argument fails. Because Dr. Hoffman-Vaile has not established that the district court committed any reversible error when it admitted the challenged evidence, she cannot establish cumulative error. United States v. Khanani, 502 F.3d 1281, 1295 (11th Cir. 2007). Dr. Hoffman-Vaile also failed to establish that the alleged errors affected her substantial rights. See United States v. Foley, 508 F.3d 627, 638–39 (11th Cir. 2007).

## B. Dr. Hoffman-Vaile Obstructed Justice Under Section 1519 When She Altered Records That Were Subpoenaed by the Grand Jury.

Dr. Hoffman-Vaile argues that, because section 1519 does not apply to a violation of a subpoena by a grand jury, her conviction for obstruction of justice under that section is invalid. Section 1519 establishes that the destruction, alteration, or falsification of records that are the subject of a federal investigation is a crime:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such

16

matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519. Dr. Hoffman-Vaile argues that section 1519 applies to proceedings before only a department or agency of the United States and does not extend to judicial proceedings, including a grand jury investigation.

Dr. Hoffman-Vaile's argument is contrary to the plain language of section 1519. "In statutory construction, 'the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results.'" United States v. Carrell, 252 F.3d 1193, 1198 (11th Cir. 2001) (quoting United States v. McLymont, 45 F.3d 400, 401 (11th Cir. 1995) (per curiam)). Section 1519 prohibits obstructive activity that is "in relation to or contemplation of" any matter "within the jurisdiction of any department or agency of the United States[.]" 18 U.S.C. § 1519. The plain language of section 1519 is broad, see Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S. Ct. 2031, 2037 (1992) ("The ordinary meaning of ['relating to'] is a broad one[.]"), and encompasses actions that have "a connection with or reference to" an investigation by a federal agency. See id. at 384, 112 S. Ct. at 2037; Webster's New World Compact Desk Dictionary 408 (2d ed. 2002) (defining "in relation to" as "concerning; regarding"). Because the Department of Health and Human Services, which is a "department or agency of the United States," conducted the investigation of Dr. Hoffman-Vaile and the

17

grand jury subpoenaed the missing records "in relation to or in contemplation of" this investigation, her failure to produce the records with the photographs intact is obstructive conduct under section 1519. Although we need not consider legislative history when the statutory language is clear, United States v. Williams, 425 F.3d 987, 989 (11th Cir. 2005) (per curiam), our conclusion that the broad language of section 1519 encompasses proceedings before the grand jury is also confirmed by the legislative history of the statute. See S. Rep. No. 107-146, at 14–15 (2002).

*C. The District Court Did Not Err When It Calculated the Amount of Loss.*

Dr. Hoffman-Vaile argues that the district court clearly erred when it calculated the amount of loss based on the amount she billed to Medicare for each procedure instead of the amount of reimbursement she actually received. Dr. Hoffman-Vaile argues that she was paid only 80 percent of the amount she billed to Medicare for each procedure she performed and, because she was convicted of defrauding Medicare, "[t]he loss was the pecuniary harm that [she] inflicted on Medicare" and did not include the remaining 20 percent she was paid by private insurers and patients. This argument fails.

"The district court needs only to make a reasonable estimate of the loss amount." United States v. Medina, 485 F.3d 1291, 1304 (11th Cir. 2007); United States Sentencing Guidelines § 2B1.1 cmt. 3(C) (Nov. 2008). When the district

18

court determines the loss calculation under the Guidelines, "the loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. 3(A); United States v. Manoocher Nosrati-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001) (per curiam). "Actual loss" is the monetary harm that resulted from the offense and was reasonably foreseeable, U.S.S.G. § 2B1.1 cmt. 3(A)(i), (iii), and "intended loss" is the monetary harm "that was intended to result from the offense," id. cmt. 3(A)(ii), (iii). "[I]n calculating the amount of loss, the Guidelines require a district court to take into account 'not merely the charged conduct, but rather all "relevant conduct," in calculating a defendant's offense level.'" United States v. Foley, 508 F.3d 627, 633 (11th Cir. 2007) (quoting United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006)).

Dr. Hoffman-Vaile intended to receive the full amount that she billed Medicare as part of her fraud. She knew, or reasonably should have known, that she would be entitled to receive 80 percent of the billed amount from Medicare and the other 20 percent from either private insurance companies or patients. The losses sustained by the insurance companies and patients resulted from the fraud perpetrated on the Medicare program and are relevant conduct that may be considered by the district court when calculating the amount of loss. See U.S.S.G. § 1B1.3. The private insurance companies and patients are victims of Dr.

Hoffman-Vaile's fraud, and any loss that they suffered is included in the loss calculation. See id. § 2B1.1 cmt. 1. The district court did not clearly err when it calculated the amount of loss based on the total amount Dr. Hoffman-Vaile billed to Medicare.

Dr. Hoffman-Vaile also argues that the district court erred when it did not offset the value of the surgeries that she performed against the amount of loss, but any error by the district court was harmless. Assuming that Dr. Hoffman-Vaile was entitled to the offset of $189,320.18 that she seeks, the revised calculation of her loss amount would be $543,153.26. Because this amount of loss is greater than $400,000, it does not alter the calculation of Dr. Hoffman-Vaile's sentencing range. See U.S.S.G. § 2B1.1.

### D. The District Court Erred When It Calculated the Amount of the Forfeiture Money Judgment.

Dr. Hoffman-Vaile argues that the district court erred when it calculated the forfeiture amount because it included the losses to private insurance companies and patients. "The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." 18 U.S.C. § 982(a)(7). Dr. Hoffman-Vaile argues that she "can only be ordered to repay proceeds that resulted from Medicare

20

fraud[,]" and "[a]ny amounts that she received from private insurance companies or other payors did not result from Medicare fraud." Because she has been ordered to pay restitution to the other victims, she argues that she should not be required to forfeit that amount to the government as well. This argument fails.

The amounts that Dr. Hoffman-Vaile received from private insurance companies and patients are "gross proceeds traceable to the commission of" her fraud because, but for her Medicare fraud, she would not have been entitled to collect these sums from the companies and patients. See id. We are not persuaded by Dr. Hoffman-Vaile's argument that her forfeiture amount should be reduced because she has paid restitution to the other victims. Although "this might appear to be a 'double dip,' restitution and forfeiture serve different goals[.]" United States v. Leahy, 464 F.3d 773, 793 n.8 (7th Cir. 2006). "[T]he focus of restitution is on the victim, [but] forfeiture focuses on the defendant." United States v. Browne, 505 F.3d 1229, 1281 (11th Cir. 2007). "In addition to forcing the disgorgement of dishonest profits, therefore, forfeiture is also a punitive action against the defendant." Id. The district court did not err when it included in the forfeiture amount the sums paid by Dr. Hoffman-Vaile's other victims, the private insurance companies and her patients. Although the district court used the correct methodology, it miscalculated the amount of the forfeiture money judgment, as the

21

government concedes.  We vacate the judgment of forfeiture to allow the district court to correct the forfeiture amount from $705,161.87 to $695,742.96.

## IV.  CONCLUSION

We **AFFIRM** Dr. Hoffman-Vaile's convictions and sentences, except that we **VACATE** the forfeiture money judgment and **REMAND** for further proceedings consistent with this opinion.