[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 09, 2011
JOHN LEY
CLERK

No. 11-11909
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-20477-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REINIER ACOSTA RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 9, 2011)

Before TJOFLAT, CARNES and WILSON, Circuit Judges.

PER CURIAM:

The United States Sentencing Guidelines provide for a 14-level increase in

the calculation of a base offense level if the loss amount from a fraud was more

than $400,000.00. U.S.S.G. § 2B1.1(b)(1)(H). Reinier Acosta Rodriguez seeks to avoid that enhancement on this appeal from his 24-month sentence, imposed after he pled guilty to six counts of health care fraud, in violation of 18 U.S.C. § 1347. Acosta Rodriguez was the president of Miami Springs Outpatient Services ("MSOS"), a purported provider of durable medical equipment to Medicare beneficiaries. He argues on appeal that the Guidelines enhancement should not apply because there was insufficient evidence to conclude that he intended to submit fraudulent Medicare claims on behalf of MSOS, and because the district court's calculation of loss was based on mere speculation.

We review a district court's interpretation of the Sentencing Guidelines *de novo*, and the amount of loss determination for clear error. *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007).

Acosta Rodriguez argues that another MSOS employee was involved in the fraud scheme and that there was no evidence presented at the sentencing hearing that it was he who actually submitted the fraudulent Medicare claims. However, the evidence presented at the sentencing hearing reflects that it was Acosta Rodriguez who applied for MSOS's medical enrollment, and the fraudulent billing began almost immediately after he became president of the company. Acosta Rodriguez withdrew funds deposited into MSOS's account by Medicare after it

was fraudulently billed. Acosta Rodriguez was a signatory on MSOS's corporate bank account during the time that the company submitted the claims. The evidence showed that 77% of the patients for whom claims were submitted were never seen by doctors, and thus, the claims made on their behalf were fraudulent.

Acosta Rodriguez states that the evidence showed that MSOS actually received only $7,813.55 of the $606,579.00 in claims submitted. He further states that law enforcement only verified that a certain percentage of claims, rather than all of those submitted, was fraudulent. Our precedent, however, requires that the district court make a reasonable estimate of the loss amount, which is the greater of the actual loss or the *intended* loss. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1343 (11th Cir. 2009). The Guidelines define "intended loss" as "the monetary harm that was intended to result from the offense." *Id.* at 1344 (citing U.S.S.G. § 2B1.1 cmt. n.3(A)(ii), (iii)). A district court's valuation of the loss or intended loss need not be made with precision—"although the district court must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines, its reasonable estimate of the intended loss will be upheld on appeal." *United States v. Dominguez*, 109 F.3d 675, 676 (11th Cir. 1997) (citations and internal quotation marks omitted). We have held that an intended loss need not be realistically possible, and we have expressly rejected the

position, adopted by other circuits, "that an intended loss cannot exceed the loss that a defendant in fact could have occasioned if his fraud had been successful." *United States v. Wai-Keung*, 115 F.3d 874, 877 (11th Cir. 1997) (per curiam) (concerning U.S.S.G. § 2F1.1, which was deleted by consolidation with § 2B1.1 in 2001).

Based on the evidence presented at the sentencing hearing, the district court's determination of the loss attributable to Acosta Rodriguez was a reasonable estimate of the loss. Acosta Rodriguez has not shown that the district court engaged in speculation, or that the calculation was without factual support. Therefore, we find no clear error by the district court in its determination that Acosta Rodriguez was responsible for intended losses of over $400,000.00, and thus, that the 14-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(H) was appropriate. Accordingly, we affirm Acosta Rodriguez's sentence.

**AFFIRMED.**