[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10757
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00154-JSM-AAS-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALLEN LAMOND RUCKSTUHL,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 21, 2017)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Allen Ruckstuhl appeals the revocation of his supervised release based on criminal acts that he committed during a fight with his girlfriend. At the revocation hearing, the district court admitted into evidence purported hearsay statements about Ruckstuhl's conduct during the altercation. On appeal, Ruckstuhl challenges for the first time the district court's admission of these statements without conducting the balancing test set forth in *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994). He also contends that the evidence of his conduct was insufficient for the district court to find that he violated the terms of his supervised release. After careful review, we affirm.

## I.    BACKGROUND

Ruckstuhl pled guilty to one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The district court sentenced him to forty-six months' imprisonment followed by three years of supervised release. As relevant here, the conditions of Ruckstuhl's supervised release prohibited him from committing any federal, state, or local crime. Doc. 43 at 3.[1]

Ruckstuhl's term of supervised release began in March 2016. In January 2017, Ruckstuhl's probation officer, Christina Gomez, filed a superseding petition alleging that Ruckstuhl had committed five violations of the terms of his

---

[1] Citations to "Doc." refer to docket entries in the district court record in this case.

supervised release.  The first four violations were based on Ruckstuhl's alleged

criminal conduct during an altercation between Ruckstuhl and his girlfriend,

Jasmine Jones.  That conduct included (1) domestic violence/aggravated assault,

(2) false imprisonment, (3) felon in possession of a firearm, and (4) grand theft of a

motor vehicle.  The fifth violation, which is not at issue on appeal, was unrelated to

the altercation and based on Ruckstuhl's alleged falsification of information

regarding his employment, which he was required to maintain as a condition of his

supervised release.[2]

The district court held a revocation hearing on the superseding petition.

Gomez was the government's first witness.  Because Gomez was not present at the

scene of the altercation between Ruckstuhl and Jones, the majority of her

testimony was based on statements that Jones made to her during an interview after

the incident.  Gomez recounted those statements as follows.

Jones was dating Ruckstuhl and had been living at his house for

approximately two months before the altercation.  On December 26, 2016, the

couple argued and physically fought over Jones's desire to leave Ruckstuhl's house

and return to her home.  The argument ended when Ruckstuhl left the house in

Jones's car.  A woman named Delisia Robinson later came to the house looking for

---

[2] Ruckstuhl fails to challenge on appeal the district court's determination that Ruckstuhl committed the fifth violation.  Thus, we decline to discuss the fifth violation or the facts supporting it.  *See United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief.  Without such argument the issue is deemed waived.").

3

Ruckstuhl.  Robinson called Ruckstuhl and asked him to return to the house so that Jones could have her car back.

Ruckstuhl returned, but he was angry and began physically fighting with Jones.  Jones ran out of the house and into the street; Ruckstuhl followed.  As Jones was running, Ruckstuhl pointed a handgun at her and threatened to kill her.  Jones dialed 911 as she fled.  During that call, which was played for the district court, Jones repeatedly told the operator that Ruckstuhl had a gun.  As soon as Ruckstuhl heard police sirens, he ran to Jones's car and drove away.  Robinson later helped Jones recover her car by making arrangements for Ruckstuhl to leave it at the local library.

After Gomez finished recounting Jones's verbal statements, the government admitted into evidence a written statement by Jones.  Gomez read that statement to the district court:

> I, Jasmine Jones, was dating Allen Ruckstuhl for maybe two months when I started noticing a change about him.  Allen started hitting me, punching me in my face, and choking me when I wanted to leave and go home.  He would take my car and be gone for days.  Allen put a gun to my head when I started fighting him back.  Then he would leave again, til[l] on the 27th of December he came back after leaving for two days with my car.  When I tried to leave, he came in the house and was choking me, and pointing a gun at my head saying he will kill me, and that's when I ran outside and called 911, with my taser, and he chased after me.  That's when he noticed I was on the phone with the police and started coming for my face pointing the gun saying he was going to kill me.  That's when Allen heard police sirens and ran into a cut where he hid – where he hid my car at.

4

Doc. 119 at 20-21.[3]  The government then asked Gomez whether Jones had told her why Jones did not feel comfortable testifying at Ruckstuhl's revocation hearing.  Ruckstuhl's counsel objected, arguing that "[t]he witness could have been subpoenaed, it could have told the Court itself what the concern might be.  That's an improper question.  I understand hearsay is admissible, but that is improper." *Id.* at 21-22.  The district court sustained the objection.

During cross examination, Ruckstuhl's counsel challenged Gomez's testimony on two grounds.  First, he asked Gomez about a man named Michael McDonald, who witnessed the altercation between Ruckstuhl and Jones.  Gomez admitted that McDonald told the police that he did not see a gun.  Second, Ruckstuhl's counsel asked whether Jones suffered any visible marks, bruises, or lacerations consistent with a physical fight or choking.  Gomez acknowledged that no such marks were observed on Jones.

The government's second and final witness was Brenda Crispin, the police officer who responded to Jones's 911 call.  Crispin did not arrive at the scene until after Ruckstuhl had left.  So, like Gomez, Crispin was only able to repeat what Jones had told her.  She did so as follows.

---

[3] The record contains conflicting evidence regarding the date of the altercation.  Jones's written statement indicates that the altercation occurred on December 27, 2016, but Gomez testified that Jones told her the date was December 26, 2016.  We note this inconsistency only for clarity; it does not change our analysis.

The altercation began when Ruckstuhl saw that Jones had packed her bags and was preparing to leave his house.  Ruckstuhl began arguing with Jones, and the argument became physical.  Ruckstuhl punched Jones in the face, and she ran for the door and into the street.  Ruckstuhl chased her, and, once he was in the street, pulled out a black handgun, pointed it at Jones, and said, "Bitch, I will f__ckin' shoot you." *Id.* at 35-36.  Jones tried to use a personal taser, which she carried for protection, on Ruckstuhl.  But Ruckstuhl snatched it out of her hand and slammed it against the ground, breaking it.  Ruckstuhl then left the scene.  Jones declined to provide Crispin with a written statement because she did not want to "ruin [Ruckstuhl's] life." *Id.* at 37.  Instead, her only concern was retrieving her car.

As he did with Gomez, Ruckstuhl's counsel cross-examined Crispin about the witness, McDonald, and Jones's injuries.  Crispin testified that she took a statement from McDonald, who told her that he observed the altercation from about 30 yards away and did not see a gun.  Ruckstuhl's counsel then asked Crispin whether she saw any signs that Jones had been punched or strangled.  Crispin responded that she did not observe any marks, bruising, or other injuries on Jones.

After hearing the evidence, the district court concluded that Ruckstuhl had violated the terms of his supervised release by committing domestic violence/aggravated assault, felon in possession of a firearm, and grand theft of a

6

motor vehicle, and by failing to work at a lawful occupation.  The district court concluded, however, that Ruckstuhl did not commit the alleged false imprisonment because Jones had the opportunity to leave Ruckstuhl's house.

Noting that he had no opportunity to make an argument before the district court ruled, Ruckstuhl argued that the government failed to present any credible evidence that he possessed a gun during the altercation.  According to Ruckstuhl, the only credible witness was McDonald, who told Crispin that he did not see a gun.  The district court responded by observing that, during the 911 call, Jones repeatedly yelled, "He's got a gun."  Doc. 119 at 52.  The district court also said, "You heard the 911 call.  You heard the panic in her voice.  So when you want to talk about the credibility of testimony, perhaps you and I can disagree as to whether or not her testimony is credible as to whether or not he had a gun." *Id.* at 53.

The district court sentenced Ruckstuhl to 18 months' imprisonment followed by a new 24 month term of supervised release.  This appeal followed.

## II.    STANDARDS OF REVIEW

"[W]hen a party raises a claim of evidentiary error for the first time on appeal, we review it for plain error only." *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009) (internal quotation marks omitted).  "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the

defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002).

A district court may revoke a term of supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). We review a district court's revocation of supervised release for an abuse of discretion. *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). In reviewing a revocation proceeding, we are bound by the district court's findings of fact unless they are clearly erroneous. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

## III.   DISCUSSION

Ruckstuhl advances two reasons why the district court erred in revoking his supervised release. First, he contends that the district court erroneously admitted hearsay evidence without conducting the balancing test set forth in *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994). Second, he argues that there was insufficient evidence for the district court to conclude that he violated the terms of his supervised release by engaging in criminal conduct. We discuss these arguments in turn.

## A.    The District Court Did Not Plainly Err by Failing to Conduct the *Frazier* Test *Sua Sponte*.

Ruckstuhl first argues that the district court improperly admitted and considered two sources of hearsay evidence:  (1) Jones's statements to Gomez and Crispin regarding the altercation and (2) the recording of Jones's 911 call. According to Ruckstuhl, the district court violated his due process rights by admitting this evidence without allowing him to confront and cross-examine Jones. Ruckstuhl has not, however, challenged the admission of Jones's written statement.

"Although the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic." *Frazier*, 26 F.3d at 114.  Defendants in revocation proceedings "are entitled to certain minimal due process requirements," including "the right to confront and cross-examine adverse witnesses." *Id.*  In deciding whether to admit hearsay during a revocation hearing, a district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Id.*  The district court also must determine that the hearsay is reliable. *Id.*

Ruckstuhl argues that the district court erred by admitting Jones's hearsay statements without conducting the balancing test articulated in *Frazier*.  But Ruckstuhl never objected to the admission of those statements on hearsay grounds. True, he did object during Gomez's testimony when the government asked whether

9

Jones had told Gomez why she was uncomfortable testifying at Ruckstuhl's revocation hearing. That objection, however, was aimed only at the particular question posed by the government—not Jones's hearsay statements generally—and the district court sustained it. Aside from that one objection, Ruckstuhl failed to raise any other challenge to Jones's hearsay statements. As a result, we review the district court's admission of Jones's hearsay statements, through the witnesses' testimony and the 911 call, for plain error. *See United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000) ("In the absence of a contemporaneous objection, hearsay claims are reviewed under the plain error doctrine.").

The district court did not plainly err in admitting Jones's hearsay statements. Even if we assume, for the sake of argument, that the district court erred by failing to conduct the *Frazier* balancing test, that error was not plain. In *Frazier*, we held that the district court's failure to establish both the reliability of the hearsay testimony and the government's good cause for not producing the witness constituted error. 26 F.3d at 114. But in *Frazier*, the defendant made a contemporaneous hearsay objection. In that context, we held, the district court must weigh the defendant's confrontation right "against the grounds *asserted by the government* for denying confrontation." *Id.* (emphasis added). Without a contemporaneous objection, the government lacks any reason or opportunity to assert the grounds for denying confrontation. And because the government must

10

assert those grounds before the district court can conduct the required balancing, a contemporaneous objection is implicit in the *Frazier* test.  In other words, *Frazier* does not clearly establish that the district court errs when it fails to conduct the balancing test *sua sponte*.  As a result, Ruckstuhl's failure to object to the admission of the witnesses' testimony and the 911 call on hearsay grounds means that he cannot establish plain error.

Even though the absence of plain error is sufficient, on its own, to reject Ruckstuhl's evidentiary challenge, we note that Ruckstuhl has failed to show how the purported error affected his substantial rights.  *See United States v. Olano*, 507 U.S. 725, 734 (1993) (stating that the defendant bears the burden of proving prejudice in a plain error analysis).  For an error to have affected substantial rights, it "must have affected the outcome of the district court proceedings."  *Id.*  Here, for two reasons Ruckstuhl cannot show that the district court's revocation decision was affected by its failure to conduct the *Frazier* balancing test.  First, many of Jones's statements would have been admissible under hearsay exceptions.  For example, Jones's statements during the 911 call and to Crispin immediately after the altercation probably were admissible either as excited utterances or present sense impressions.  *See* Fed. R. Evid. 803(2) (defining an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused."); Fed. R. Evid. 803(1) (defining a

11

present sense impression as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.").[4]  Had Ruckstuhl contemporaneously objected to the admission of these statements as hearsay, the district court likely would have determined that they were admissible hearsay and thus considered them anyway, without implicating *Frazier*.  Second, Jones's verbal statements during the 911 call and to Gomez and Crispin conveyed the same information as her written statement, the admission of which Ruckstuhl has failed to challenge on appeal.  Because the challenged verbal statements are largely duplicative of the unchallenged written statement, their admission could not have affected Ruckstuhl's substantial rights.

In sum, the district court did not plainly err by failing to conduct the *Frazier* test *sua sponte*.  Even if such an error were plain, it would not warrant reversal in this case because Ruckstuhl has failed to show how the error affected the outcome of his revocation hearing.

**B.  The Evidence Was Sufficient to Find that Ruckstuhl Violated the Terms of His Supervised Release by Engaging in Criminal Conduct.**

Ruckstuhl next argues that the government failed to show by a preponderance of the evidence that he violated the terms of his supervised release.

---

[4] We recognize that district courts are not required to apply the Federal Rules of Evidence during revocation proceedings.  *Frazier*, 26 F.3d at 114.  This does not mean, however, that courts cannot look to those rules to determine what constitutes hearsay in circumstances like those presented here.

12

Specifically, he challenges the sufficiency of the evidence that he committed domestic violence/aggravated assault, grand theft of a motor vehicle, and felon in possession of a firearm.  We discuss these criminal acts in turn.

### 1.     Domestic Violence/Aggravated Assault

As an initial matter, the record reflects some confusion regarding the first violation alleged in Ruckstuhl's superseding petition.  The superseding petition identified the offense as aggravated battery, but the accompanying memorandum identified it as domestic violence/aggravated assault.  The district court, apparently relying on the memorandum, found that Ruckstuhl had committed domestic violence/aggravated assault.  On appeal, Ruckstuhl argues that the evidence was insufficient for the district court to find that he committed aggravated battery because there was no evidence that Jones suffered great bodily harm.  *See* Fla. Stat. § 784.045 (providing that aggravated battery occurs when, among other things, the victim suffers great bodily harm).  He raises no argument about the offense that the district court actually found—domestic violence/aggravated assault.  During the revocation hearing, Ruckstuhl failed to object based on the discrepancy between the offense that appeared in the superseding petition and the offense that the district court found.  As a result, we will review only whether the evidence was sufficient to find that Ruckstuhl committed domestic violence/aggravated assault.

13

Under Florida law, domestic violence "means any assault, aggravated assault, battery, aggravated battery . . . or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." Fla. Stat. § 741.28(2). An assault is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011. An assault is aggravated if it is performed (1) with a deadly weapon without intent to kill, or (2) with intent to commit a felony. *Id.* § 784.021.

Here, the evidence was sufficient for the district court to find that Ruckstuhl committed aggravated assault under the deadly weapon prong of Florida's aggravated assault statute. The testimony from Gomez and Crispin, coupled with the recording of Jones's 911 call, showed that Ruckstuhl chased Jones down the street with a gun, pointed it at Jones's head, and threatened to shoot her and that Jones feared that Ruckstuhl would carry out his threat. Based on this evidence, the district court's finding that Ruckstuhl committed aggravated assault was not clearly erroneous. And because the evidence also showed that Ruckstuhl and Jones had been living together when this assault occurred, the district court's finding of domestic violence also was not clearly erroneous.

14

Ruckstuhl points out that the only evidence that he had a gun during the altercation came from a single source: Jones's statements. He argues that these statements lack credibility, especially in light of the testimony that the only third-party witness to the altercation, McDonald, saw no gun. But Ruckstuhl raised this same credibility argument during the revocation hearing, and the district court rejected it. The district court found Jones's statements credible, noting that they were consistent with "the panic in her voice" during the 911 call. Doc. 119 at 52. We will not question the district court's credibility determination without good cause. *Jeffries v. United States*, 748 F.3d 1310, 1313 (11th Cir. 2014) ("Because credibility determinations are the province of the factfinder, we give them substantial deference." (internal citation omitted)). In fact, we must defer to the district court's credibility determination "unless his understanding of the facts appears to be unbelievable." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (internal quotation marks omitted). Here, we see no reason to doubt the district court's understanding of the facts. So, deferring to the district court's credibility determination, we conclude that the evidence was sufficient to find that Ruckstuhl possessed a deadly weapon during the altercation.

### 2.    Grand Theft of a Motor Vehicle

In Florida, a person commits theft when he:

[K]knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1). If the stolen property is a motor vehicle, then the crime is grand theft. *Id.* § 812.014(2)(c)(6).

Ruckstuhl contends that the evidence was insufficient to find that he committed grand theft of a motor vehicle because "[t]he government presented absolutely no evidence of Ruckstuhl's intent to deprive Jones of her car either temporarily or permanently." Appellant's Br. at 34. We disagree. Even though there was no direct evidence, the circumstantial evidence was sufficient for the district court to find intent. *See Manuel v. State*, 16 So. 3d 833, 835 (Fla. Dist. Ct. App. 2005) ("[D]irect evidence of intent is rare, and intent is usually proven through inference."). Both Gomez and Crispin testified that Ruckstuhl fled the scene of the altercation in Jones's car. They also testified that Jones only retrieved her car with the help of Robinson, who arranged for Ruckstuhl to leave the car at the local library some time later. Based on this evidence, the district court's finding that Ruckstuhl committed grand theft of a motor vehicle was not clearly erroneous.

16

### 3.    Felon in Possession of a Firearm

Florida law also makes it unlawful for a convicted felon to possess a firearm. Fla. Stat. § 790.23.  Ruckstuhl does not dispute that he is a convicted felon. Instead, he contends that the evidence was insufficient to find that he possessed a firearm during the altercation with Jones.  But, as we discussed with respect to the domestic violence/aggravated assault allegation, the district court credited Jones's statements that Ruckstuhl had a gun as he chased her down the street.  Those statements were sufficient for the district court to find, by a preponderance of the evidence, that Ruckstuhl committed the offense of felon in possession of a firearm.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order revoking Ruckstuhl's supervised release.

**AFFIRMED.**

17