[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13621
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cr-00131-VMC-SPF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AKBAR GHANEH FARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 4, 2020)

Before GRANT, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Akbar Fard appeals his convictions and 36-month total sentence for six counts of wire fraud, along with the district court's forfeiture and restitution orders. Fard contends the Government failed to present sufficient evidence to sustain his convictions for wire fraud, specifically that it failed to show he made material misrepresentations to government agencies when applying for research funding. In addition, Fard asserts the district court erred in calculating the loss suffered by government agencies because he performed under the contracts, and thus, the agencies suffered no pecuniary loss. Fard argues this lack of harm to the agencies also results in the court's orders of forfeiture and restitution being in error. After review, we affirm the district court.

## I.  DISCUSSION

### A.  *Sufficiency of the Evidence*

To prove wire fraud under 18 U.S.C. § 1343, the government must establish that the defendant (1) intentionally participated in a scheme to defraud and (2) used the interstate wires in furtherance of the scheme. *United States v. Langford*, 647 F.3d 1309, 1320 (11th Cir. 2011). "A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, . . . reasonably calculated to deceive persons of ordinary prudence." *United States v. Hasson*, 333 F.3d 1264, 1270-71 (11th Cir. 2003) (internal citation omitted). A material misrepresentation is one having a natural tendency to influence the

decision maker. *Id.* at 1271. We held that a "scheme to defraud" requires the intention to harm the victim, distinguishing it from a "scheme to deceive" the victim, but not harm them. *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), *abrogated on other grounds by United States v. Takhalov*, 838 F.3d 1168 (11th Cir. 2016).

The district court did not err in denying Fard's motion for judgment of acquittal as sufficient evidence supports his convictions. *See United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007) (stating we review *de novo* the denial of a motion for judgment of acquittal on sufficiency grounds, viewing the evidence "in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor"). Throughout the trial, the jury heard how Fard was warned that lying in the proposals was illegal, and how the contracting officers relied on the statements made by Fard, they negotiated with Fard to ensure the budgets and research met the agencies' needs, and entered a final agreement, which required modifications to be made with the contracting officers. *See id.* (stating we will affirm a district court's denial of a motion for judgment of acquittal if a reasonable jury could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt, and this standard does not require the evidence to be inconsistent with every reasonable hypothesis other than guilt, but rather, the jury may choose between reasonable

conclusions based on the evidence).  Further, the jury heard from Special Agent

Mazzella about how the awards were Advanced Material Technology, Inc.'s

(AMTI's) only source of income, Fard's spending was inconsistent with the

information in the budgets, and Fard diverted approximately 70 percent of the

funds awarded to AMTI.  From the combination of Fard's obligations and actual

spending, the Government presented sufficient evidence to show that Fard had

made material misrepresentations to the agencies.  *See Hasson*, 333 F.3d at 1270-

71.  From his success in obtaining the awards, the jury could also conclude that

Fard's statements had the natural tendency of influencing those in charge of

granting the awards.  *See id.* at 1271.  Additionally, the jury could conclude the

agencies were harmed and did not receive the benefits of their bargaining with

Fard.  From both NASA and the Navy representatives, the jury heard how Fard's

intentional misrepresentations resulted in the agencies awarding funds they

otherwise would not have, thereby undermining the purpose of the programs to

stimulate innovation and economic growth.  *See Takhalov*, 827 F.3d at 1312-13.

Accordingly, the district court did not err in denying Fard's motion for judgment of

acquittal.  *See Browne*, 505 F.3d at 1253; *Langford*, 647 F.3d at 1320.

B.  *Loss Amount*

The 2016 Sentencing Guidelines specifies a 14-level enhancement to a base

offense level for a fraud offense involving a loss amount of more than $550,000,

but less than $1.5 million.  U.S.S.G. § 2B1.1(b)(1)(H).  Although the government must support its loss calculation, the guidelines do not require a precise determination of loss.  *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).  When the case involves government benefits, such as grants, loans, or entitlement program payments, the guidelines require the loss be considered "not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses."  U.S.S.G. § 2B1.1, comment. (n.3(F)(ii)).  In determining the scope of a "government benefit," we have reasoned that programs that focus mainly on who is doing the work, rather than on the work being produced constitute "entitlement programs."  *See United States v. Maxwell*, 579 F.3d 1282, 1306 (holding affirmative action municipal programs constituted government benefits under the sentencing guidelines).

The district court did not err in its application of the government benefit provision or clearly err in its loss calculation.  *See id.* at 1305 (reviewing a district court's interpretation of the sentencing guidelines *de novo*, and the determination of the amount of loss involved in the offense for clear error).  The district court concluded that *Maxwell* governed the issues discussed in sentencing and found that the Small Business Innovation Research and Small Business Transfer Technology Research programs constituted government benefits.  Regarding whether Fard's conduct fell within the scope of the provision, the district court applied the loss

5

calculation for the amount Fard diverted.  Though not explicit in its finding of whether Fard was an unintended recipient or only used the funds for unintended purposes, the court heard reasonable grounds for either as the Government distinguished awarding funds to AMTI, not Fard, and Fard's conduct demonstrated the awards were used for unintended purposes.  U.S.S.G. § 2B1.1, comment. (n.3(F)(ii)).  Regardless of which justification the court relied on, the court's determination of loss on either basis was not clearly erroneous.  *See Maxwell*, 579 F.3d at 1305.  The district court heard from both the Navy and NASA how Fard's conduct undermined the purpose of providing the research funding to small businesses and, in the case of the Navy, created a question as to the veracity of Fard's work.  Accordingly, the district court did not err in interpreting the Guidelines or make a mistake indicative of a clear error in calculating the loss.  *See United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (stating we will conclude a finding of fact is clearly erroneous only if left with a "definite and firm conviction that a mistake has been committed"); U.S.S.G. § 2B1.1, comment. (n.3(F)(ii)).

## C.  Forfeiture and Restitution

We have recognized that forfeiture and restitution are separate concepts serving different goals.  *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009) (rejecting the argument that appellant's forfeiture amount should

be reduced because she had already paid restitution to the other victims). Similarly, we treat loss calculations distinct from restitution because "a defendant's culpability will not always equal the victim's injury." *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) (quotations omitted).

The district court did not err in issuing the forfeiture and restitution orders. *See United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (reviewing "the legality of an order of restitution" *de novo* and the sentencing court's determination of restitution value for abuse of discretion); *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (reviewing the district court's legal conclusions regarding forfeiture *de novo*, and its findings of fact for clear error). Fard's arguments challenging the orders are contingent upon the success of his loss arguments, but the district court did not err in calculating the loss and the court's loss calculation does not have a direct correlation to the forfeiture and restitution the court ultimately ordered. *See Hoffman-Vaile*, 568 F.3d at 1344; *Huff*, 609 F.3d at 1247. Therefore, Fard's grounds for challenging the forfeiture and restitution orders are meritless.

## II.  CONCLUSION

The district court did not err in denying Fard's motion for judgment of acquittal on sufficiency grounds because the Government presented sufficient evidence that Fard made intentional misrepresentations in his proposals and the

agencies suffered harm because of those misrepresentations.  Additionally, the district court did not err in calculating the loss resulting from Fard's actions as the harm Fard caused outweighed any benefit he provided the agencies.  Because the loss calculation was the only basis on which Fard challenged the forfeiture and restitution orders, his arguments are meritless.  Accordingly, we affirm.

**AFFIRMED.**